667 So.2d 510 (1996)
STATE of Louisiana
v.
Lester JOHNSON, III.
STATE of Louisiana
v.
1979 CADILLAC DEVILLE and $24.00 U.S. Currency Seized from Frank L. Wilson.
Nos. 94-KK-0595, 94-C-1077.
Supreme Court of Louisiana.
January 16, 1996.
Rehearing Denied in February 16, 1996.
*511 Kevin V. Boshea, New Orleans, for Applicant in No. 94-KK-0595.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Gregory G. Hangartner, New Orleans, Martin K. Maley, Baton Rouge, John J. Williams, Jr., Covington, for Respondent in No. 94-KK-0595.
Dorothy Ann Pendergast, Thomas Allen Usry, John Franklin Weeks, II, Metairie, for Louisiana Sheriffs Association (Amicus Curiae) in both cases.
Paul Carmouche, District Attorney, John F. McWilliams, Jr., Shreveport, for Applicant in No. 94-C-1077.
J. Jay Caraway, Shreveport, Ellis P. Adams, Jr., Baton Rouge, for Respondent in No. 94-C-1077.
Brett A. Sulzer, Baton Rouge, for Dept. of Public Safety and Corrections and Office of the State Police (Amicus Curiae) in No. 94-C-1077.
Rehearing Denied in 94-C-1077 February 16, 1996.
BURRELL J. CARTER, Justice Pro Tem.[1]
In these cases consolidated for review, we consider whether, under the circumstances presented herein, a civil forfeiture of property under LSA-R.S. 40:2601, et seq., the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989 (the Drug Forfeiture Act), constitutes "punishment" for purposes of federal double jeopardy analysis. Based on our interpretation of recent United States Supreme Court jurisprudence, we conclude that, under the circumstances presented in these cases, the state's civil forfeiture of an individual's property under the Drug Forfeiture Act does not constitute "punishment" for the purposes of double jeopardy analysis.

FACTS AND PROCEDURAL HISTORY
The underlying facts of these consolidated cases are as follows:
(Lester Johnson) No. 94-KK-0595: On May 20, 1992, New Orleans police officers received information via a confidential informant (CI) relative to narcotics trafficking by two individuals at a residence located at 1204 St. Ferdinand in New Orleans, Louisiana. One of the individuals was the defendant, Lester Johnson, and the other was Johnson's mother, Barbara Williams. The CI advised police officers that he could make a controlled purchase of cocaine from the St. Ferdinand residence. While under police surveillance, the CI purchased from the St. Ferdinand residence a clear, plastic bag containing a white powder suspected to be cocaine. The powder was subsequently tested; the test yielded a positive reaction for cocaine.
Pursuant to this information, police officers prepared to secure a search warrant for the St. Ferdinand residence. While obtaining the search warrant, police officers continued to conduct surveillance of the residence and observed heavy pedestrian traffic. Police officers also observed Johnson meet with the pedestrians and exit the St. Ferdinand residence with a firearm in his hand. Johnson then left the premises in his automobile.
Fearing that Johnson may have removed contraband from the residence, police officers stopped the Johnson vehicle a few blocks from the St. Ferdinand residence and observed a revolver on the floorboard of the vehicle. Police officers advised Johnson of his Miranda rights, that he was under investigation for narcotics trafficking, and that a search warrant was being obtained for the St. Ferdinand residence. Johnson admitted that cocaine, which he acknowledged belonged to him, was present in the St. Ferdinand residence. Johnson was arrested for possession of cocaine. A search of Johnson's person revealed $900.00 in currency in his rear pocket. The currency and the weapon were seized. After the search warrant was obtained, police officers searched the St. Ferdinand residence. A pill bottle containing crack cocaine, an ounce of cocaine, a triple *512 beam scale, two plastic bags containing a white powder residue, a large plastic bag containing sixteen smaller bags of white powder residue, and an additional $76.00 in currency were recovered from the residence. Johnson's mother, Barbara Williams, was also arrested for possession of cocaine.
On June 23, 1992, prior to instituting the criminal charges, the state, pursuant to LSA-R.S. 40:2608(3)(a), notified Johnson and Williams that it intended to seek forfeiture of the $976.00 seized at the time of their arrest. By bill of information filed July 20, 1992,[2] the state charged Johnson and Williams with violating LSA-R.S. 40:967F(1)(c) by possessing more than 400 grams of cocaine. On August 6, 1992, the trial court rendered a judgment of civil forfeiture against the defendants, granting the state an in rem forfeiture of the $976.00.
On July 22, 1993, Lester Johnson was convicted by a twelve-person jury of possession of more than 400 grams of cocaine, a violation of LSA-R.S. 40:967F(1)(c). Johnson filed a motion for a new trial, contending that the charges against him should be quashed because the forfeiture of the $976.00 constituted an initial punishment such that the double jeopardy clauses of the federal and state constitutions precluded the state from seeking a criminal conviction for the same conduct in a subsequent proceeding. The trial court granted the motion on federal or state double jeopardy grounds, or both, and the state appealed. The court of appeal reversed the trial court judgment, concluding that the money forfeiture was remedial, rather than punitive, and thus did not constitute prior punishment implicating the double jeopardy clause. State v. Johnson, 93-2557 (La.App. 4th Cir. 2/11/94); 632 So.2d 817, 818. We granted Johnson's application for writ of certiorari, State v. Johnson, 94-0595 (La.9/23/94); 642 So.2d 1302, and consolidated the matter for review with State v. 1979 Cadillac Deville, No. 94-C-1077.
(Frank L. Wilson) No. 94-C-1077: On April 10, 1991, a Shreveport police officer observed Frank L. Wilson exceeding the speed limit in his 1979 Cadillac. The officer attempted to stop the Wilson vehicle by activating his emergency lights and siren and pursuing Wilson. However, Wilson maintained a constant speed and refused to comply with the officer's instructions. The officer observed Wilson throw a plastic bag from the passenger window of the Cadillac. Wilson later stopped his vehicle, and the discarded item was recovered. The plastic bag held seventeen smaller plastic bags containing rock cocaine. Thereafter, Wilson was arrested, and $24.00 in currency was seized from his person. A search of the Cadillac revealed a pistol, a pyrex tube that tested positive for cocaine residue, and a set of mini-scales. On June 11, 1991, Wilson pleaded guilty to attempted possession of cocaine, LSA-R.S. 14:27 and 40:967 C, and was subsequently sentenced to imprisonment at hard labor for one year.
On June 10, 1991, the state filed a Petition for Forfeiture of the 1979 Cadillac Deville, VIN # XXXXXXXXXXXXX, as well as the $24.00 seized from Wilson at the time of his arrest. Wilson denied the allegations of the petition of forfeiture and filed a motion for summary judgment, contending that the forfeiture proceeding constituted the imposition of a second punishment for the same offense and was violative of the protections against double jeopardy contained in the federal and state constitutions. The state also filed a motion for summary judgment. Both motions for summary judgment were denied.
At the trial of the merits, it was established that Wilson had purchased the Cadillac, which had an odometer reading of 180,000 miles, for $2,800.00 and that towing and storage fees of $50.00 and $2,454.50, respectively, had been incurred to the date of the forfeiture hearing. After the hearing, the trial court determined that the forfeiture proceeding was against the property, and thus double jeopardy did not apply. On August 14, 1992, the trial court rendered a judgment of civil forfeiture in favor of the state and against Wilson, ordering that the Cadillac and the $24.00 be forfeited.
Wilson appealed the trial court judgment, contending that the forfeiture of his vehicle violated the double jeopardy provisions of the *513 United States and Louisiana constitutions.[3] A divided five-judge panel of the court of appeal reversed the trial court judgment. State v. 1979 Cadillac DeVille, 24954 (La. App. 2nd Cir. 2/28/94); 632 So.2d 1221. A majority of the panel determined that recent United States Supreme Court decisions mandated a finding that the forfeiture proceeding constituted punishment for the purposes of double jeopardy. State v. 1979 Cadillac DeVille, 632 So.2d at 1228-29. We granted the state's application for writ of certiorari to consider the double jeopardy issues in consolidation with those raised by State v. Johnson. State v. 1979 Cadillac DeVille, 94-1077 (La.9/23/94); 642 So.2d 1302.

FEDERAL LEGAL PRECEPTS APPLICABLE TO A DETERMINATION OF WHETHER A CIVIL SANCTION CONSTITUTES "PUNISHMENT" UNDER A DOUBLE JEOPARDY ANALYSIS
A person cannot twice be placed in jeopardy for the same offense. U.S. Const. amend. V; LSA-Const. art. 1, § 15; LSA-C.Cr.P. art. 591; State v. Knowles, 392 So.2d 651, 654 (La.1980).
LSA-Const. art. 1, § 15 provides, in pertinent part, that "[n]o person shall be twice placed in jeopardy for the same offense." Amendment V of the United States Constitution, in pertinent part, provides that "nor shall any person be subject for the same offence to be put in jeopardy of life or limb." From our analysis of the language of these provisions and the constitutional history of the state provision, we conclude that the drafters and ratifiers of the state constitution did not intend for this court to define "punishment" for purposes of double jeopardy analysis any more broadly in favor of individuals subjected to the civil forfeiture of property than "punishment" has been construed by the United States Supreme Court in its recent cases. See Department of Revenue of Montana v. Kurth Ranch, ___ U.S. ___, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); VII Records of the Louisiana Constitutional Convention of 1973; Convention Transcripts, Sept. 7, 1973, at 1163-1173.
As adopted in 1974, LSA-Const. art. 1, § 4 provided, in pertinent part, that "[p]ersonal effects, other than contraband, shall never be taken." This provision was interpreted by this court as granting far-reaching protection to the rights of citizens to own and control private property. See State v. Spooner, 520 So.2d 336 (La.1988); State v. Manuel, 426 So.2d 140 (La.1983); State v. 1971 Green GMC Van, 354 So.2d 479 (La.1977).
In 1989, the "personal effects" guarantee of the state constitution was amended to provide as follows:
Personal effects shall never be taken. But the following property may be forfeited and disposed of in a civil proceeding, as provided by law: contraband drugs; property derived in whole or in part from contraband drugs; property used in the distribution, transfer, sale, felony possession, manufacture, or transportation of contraband drugs; property furnished or intended to be furnished in exchange for contraband drugs; property used or intended to be used to facilitate any of the above conduct; or other property because the above described property has been rendered unavailable.
In the present case, with respect to the definition of "punishment" for purposes of double jeopardy analysis in connection with civil forfeitures of property, Article 1, § 4 of the Louisiana Constitution grants no greater individual rights than Amendment V to the United States Constitution as currently interpreted by the United States Supreme Court decisions. Consequently, we will apply those federal precepts in deciding the present case, which presents only the question of whether a civil forfeiture of property under the Drug Forfeiture Act is "punishment" for purposes of double jeopardy analysis.
*514 The double jeopardy clauses of the federal and state constitutions protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See U.S. v. Halper, 490 U.S. at 440, 109 S.Ct. at 1897, citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); Butler v. Department of Public Safety and Corrections, 609 So.2d 790, 795 (La.1992). The instant consolidated cases involve only the third type of double jeopardy protection, namely protection against multiple punishments for the same offense.
In analyzing a case to determine whether the third of these protectionsthe one against multiple punishmentshas been violated, it is necessary to resolve whether the particular sanction imposed upon a person for the same conduct constitutes "punishment" for this purpose. The precepts applicable to a determination of whether a civil sanction is "punishment" under a Fifth Amendment double jeopardy analysis are set forth in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and Department of Revenue of Montana v. Kurth Ranch, ___ U.S. ___, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).
In Halper, the Supreme Court considered the double jeopardy implications of a fine levied in a civil proceeding on a felon subsequent to and based upon the same conduct as his criminal conviction. The government prosecuted and convicted the defendant on 65 counts of Medicaid fraud under the criminal false-claims statute, 18 U.S.C. § 287. Defendant was then sentenced to a term of imprisonment and fined $5,000.00. The government later filed a civil action against the defendant under the False Claims Act, 31 U.S.C. §§ 3729-3731, exposing the defendant to potential civil liability of $130,000.00 on the 65 fraud counts, which had resulted in $585.00 in overcharges to the federal government.
The Supreme Court explained that, although a civil remedy does not constitute punishment within the meaning of the double jeopardy clause merely because Congress provided for civil recovery in excess of the government's actual damages, this does not foreclose the possibility that, in a particular case, a civil penalty authorized by the Act may be so extreme and so divorced from the government's actual damages and expenses as to constitute "punishment." The Supreme Court then devised a rule for determining whether, and under what circumstances, a civil penalty may constitute punishment for the purposes of the double jeopardy clause. Halper, 490 U.S. at 448, 109 S.Ct. at 1901. The Court held that a civil penalty may constitute punishment for purposes of double jeopardy analysis, but only if it meets two criteria. First, the civil penalty would have to impose "a sanction overwhelmingly disproportionate to the damages" the offender has caused. Second, the civil penalty would have to bear "no rational relation to the goal of compensating the Government for its loss," i.e. the costs incurred in investigating and prosecuting the violation. Halper, 490 U.S. at 449-50, 109 S.Ct. at 1902. The Supreme Court noted that this rule is for the rare case, such as the one presented in Halper, when a penalty provision subjects an offender to a sanction overwhelmingly disproportionate to the damages he has caused. Halper, 490 U.S. at 449, 109 S.Ct. at 1902. In Halper, the disparity between the district court's approximation of the government's loss of $585.00 together with the costs of investigation, prosecution, etc. and Halper's $130,000.00 liability was "sufficiently disproportionate that the sanction constitutes a second punishment in violation of double jeopardy." Halper, 490 U.S. at 452, 109 S.Ct. at 1904. Nevertheless, the Court remanded the case to afford the government an opportunity to make an accounting of its actual costs arising from its prosecution of the defendant. Halper, 490 U.S. at 452, 109 S.Ct. at 1903-04.
The Supreme Court reasoned that the government is entitled to rough remedial justice in that it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment *515 for the purpose of double jeopardy analysis. Halper, 490 U.S. at 445-46, 109 S.Ct. at 1900. The Court in Halper explained that remedial justice is not an "exact pursuit" and that the government's damages and costs may be difficult, if not impossible, to ascertain. Halper, 490 U.S. at 449, 109 S.Ct. at 1902. Inevitably, "the process of affixing a sanction that compensates the Government for its costs" involves "an element of rough justice." Halper, 490 U.S. at 449, 109 S.Ct. at 1902. Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the government for its losses and the civil remedy appears to qualify as "punishment" within the plain meaning of that word, then the penalty sought is not remedial and may constitute a second punishment for double jeopardy purposes. Halper, 490 U.S. at 448-49, 109 S.Ct. at 1902.
Consequently, in making the assessment of whether a sanction imposed on an individual is punishment for double jeopardy purposes, the labels "criminal" and "civil" are not of paramount importance. Halper, 490 U.S. at 447, 109 S.Ct. at 1901. Rather, the rule is one of reason. Halper, 490 U.S. at 449, 109 S.Ct. at 1902. Further, a determination of whether a particular sanction is remedial is not determined from the perspective of the defendant because, for the defendant, even remedial sanctions carry the sting of punishment. However, it is the purposes actually served by the sanction in question that must be evaluated to determine whether a particular sanction constitutes criminal punishment. Halper, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7. A civil sanction that cannot fairly be said to serve a solely remedial purpose, but instead can only be explained as also serving either retributive or deterrent purposes, is punishment. Under the prohibitions against double jeopardy, a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution. Halper, 490 U.S. at 448-49, 109 S.Ct. at 1902.
In Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court interpreted 21 U.S.C. § 881 and held that, despite their nominal classification as civil proceedings, forfeitures under the statute constituted punishment for purposes of the Excessive Fines Clause of the Eighth Amendment of the U.S. Constitution.
Austin pleaded guilty to one count of possession of cocaine with intent to distribute in violation of South Dakota state law. The prosecution stemmed from the defendant's sale of two grams of cocaine to an undercover Sioux Falls police officer in an automobile body shop. The defendant had obtained the cocaine from his mobile home parked nearby. After the guilty plea and imposition of sentence, the government attempted to seize the defendant's mobile home and automobile body shop by filing an in rem action for their civil forfeiture in federal district court.
In granting the government's motion for summary judgment, the court rejected Austin's argument that forfeiture of his properties would violate the Eighth Amendment's Excessive Fines Clause. The Court of Appeals affirmed, concluding that the Eighth Amendment is inapplicable to in rem civil forfeitures. The Supreme Court held that a civil forfeiture under §§ 881(a)(4) and (a)(7) is a monetary punishment and, as such, is subject to the limitations of the Excessive Fines Clause. Austin v. United States, 509 U.S. ___, 113 S.Ct. at 2812. Because the Excessive Fines Clause limits the government's power to exact payments, whether in cash or in kind, "as punishment for some offense," 509 U.S. ___, 113 S.Ct. at 2805 (quoting Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989)), the question presented to the Court was whether the forfeiture under §§ 881(a)(4) and (a)(7) was punishment. Austin, 509 U.S. at ___, 113 S.Ct. at 2806.
Therefore, whether a civil forfeiture is subject to the limitations of the Excessive Fines Clause depends on whether the forfeiture, at least in part, serves to punish the defendant: "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather *516 can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term." Austin, 509 U.S. at ___, 113 S.Ct. at 2812 (quoting Halper, 490 U.S. at 448, 109 S.Ct. at 1902). The Court explained that the forfeitures under §§ 881(a)(4) and (a)(7) were more clearly and quickly identifiable as punishment than the civil penalty in Halper in that:
[i]n Halper, we focused on whether "the sanction as applied in the individual case serves the goals of punishment." 490 U.S., at 448, 109 S.Ct., at 1902. In this case, however, it makes sense to focus on §§ 881(a)(4) and (a)(7) as a whole. Halper involved a small, fixed-penalty provision, which "in the ordinary case ... can be said to do no more than make the Government whole." 490 U.S., at 449, 109 S.Ct., at 1902. The value of the conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7), on the other hand, can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental. See [U.S. v.] Ward, 448 U.S. [242], at 254, 100 S.Ct. [2636], at 2644 [65 L.Ed.2d 742]. Furthermore, as we have seen, forfeiture statutes historically have been understood as serving not simply remedial goals but also those of punishment and deterrence.
Austin, 509 U.S. at ___ n. 14, 113 S.Ct. at 2812 n. 14.
The Court reasoned that forfeitures, generally, and statutory in rem forfeitures, in particular, historically have been understood, at least in part, as punishment. Austin, 509 U.S. at ___-___, 113 S.Ct. at 2806-10. The Court further reasoned that §§ 881(a)(4) and (a)(7) forfeitures are properly considered punishment because these sections clearly focus on the owner's culpability by expressly providing "innocent owner" defenses and by tying forfeiture directly to the commission of drug offenses. Moreover, the Court noted that the legislative history confirmed that the provisions serve to deter and to punish. Austin, 509 U.S. at ___-___, 113 S.Ct. at 2810-11.
While declining to enunciate a test for determining when a forfeiture is constitutionally excessive, the Court in Austin held that in rem civil forfeitures under § 881 constituted punishment for purposes of the Eighth Amendment.[4] Thus, the Court interpreted Halper to prohibit a second sanction that may not fairly be characterized as remedial. Austin, 509 U.S. at ___, 113 S.Ct. at 2812.
In Department of Revenue of Montana v. Kurth Ranch, ___ U.S. ___, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Supreme Court held that a tax on the possession of illegal drugs assessed after the state has imposed a criminal penalty for the same conduct violated the constitutional prohibition against successive punishments for the same offense. The Court noted that the features of the tax statute revealed its punitive character and distinguished it from taxes imposed primarily to raise revenue. Not only did the statute impose a "remarkably high" rate of taxation, but its imposition was conditioned on the commission and arrest for the conduct ultimately giving rise to the tax. Kurth Ranch, ___ U.S. at ___, 114 S.Ct. at 1946-47. The tax was unusual because, although purportedly a species of property tax, it was levied on goods neither owned nor possessed by the taxpayer when the tax was assessed. Kurth Ranch, ___ U.S. at ___, 114 S.Ct. at 1948. The Court concluded that the drug tax was fairly characterized as punishment and, under the double jeopardy clause, could not be assessed against the taxpayer after a criminal prosecution for the same offense had occurred. Kurth Ranch, ___ U.S. at ___, 114 S.Ct. at 1948.
The Supreme Court in Halper afforded guidance for federal double jeopardy analysis, but there have been many and varied interpretations of Halper, Austin, and Kurth *517 Ranch.[5] This Court has adopted the Halper guidelines in cases outside the forfeiture arena. See e.g., Butler v. Department of Public Safety and Corrections, 609 So.2d at 795-96.[6] As noted earlier, the Halper analysis calls for application of the two-part test, namely, does the civil penalty (1) impose a sanction overwhelmingly disproportionate to the damages the offender has caused and (2) bear no rational relation to the goal of compensating the government for the costs it has incurred in investigating and prosecuting the violation. Halper, 490 U.S. at 449, 109 S.Ct. at 1902. Only if the specific penalty satisfies both of these conditions will it violate double jeopardy prohibitions. Halper and Austin demonstrate that civil sanctions may advance punitive and remedial goals at the same time. Accordingly, we conclude that, under the federal constitutional principles articulated in Halper, Austin, and Kurth Ranch, a civil sanction is prohibited to the extent, and only to the extent, that it cannot fairly be characterized as remedial. Conversely, to the extent that a remedial purpose is served, the civil sanction does not constitute "punishment" within the meaning of the double jeopardy clause, unless the sanction is in effect so disproportionate to the government's losses that it can be explained only as serving deterrent or retributive purposes. However, the rule is one of reason, namely, is the sanction not overwhelmingly disproportionate to the damages caused and does the sanction bear a rational relation to the goal of compensating the government for its loss. If the answers to these inquiries are in the affirmative, then, under our analysis of the Supreme Court opinions and other decisions, civil seizures or takings of property by the government will not constitute "punishment" for the purposes of double jeopardy analysis.
The Supreme Court has recognized that the forfeiture of contraband may be characterized as remedial because it removes dangerous or illegal items from society. Austin, 509 U.S. at at ___, 113 S.Ct. at 2811; United States v. One Assortment of 89 Firearms, 465 U.S. 354, 364, 104 S.Ct. 1099, 1106, 79 L.Ed.2d 361 (1984). In State v. Manuel, 426 So.2d at 144, the Louisiana Supreme Court recognized that there are two kinds of property which may be classified as contraband as follows:
Things which intrinsically are illegal to possess and are therefore insusceptible of ownership are categorized as contraband per se. Such articles include illegal narcotics, unregistered stills, unlawful alcohol, and illicit gambling devices. Things which may be forfeited because they are the immediate instrumentalities of a crime, but which are not ordinarily illegal to possess, are classified as derivative contraband. Derivative contraband encompasses guns, automobiles, ships and other such property when used to effectuate a proscribed activity.
See also Greenburg v. One Hundred Seventy-Five Thousand Dollars in Cash, 517 So.2d 430, 431-32 (La.App. 1st Cir.1987). Based on the Supreme Court decisions, federal and state appellate cases, and self evident principles, the civil divestiture of contraband per se or any direct or indirect "proceeds" of illegal drug sales, i.e., any property obtained from or traceable to the sale, exchange, or transfer of contraband *518 drugs should not be characterized as either a "forfeiture" or "punishment" for the purposes of double jeopardy analysis. The terms "forfeiture" and "punishment" are commonly used to mean the imposition of a loss by the taking away of some preexisting valid right without compensation, Black's Law Dictionary 650 (6th ed. 1990), and "[a] deprivation of property or some right." Black's Law Dictionary at 1234. The government's taking of property in which the "owner" has never actually had a legal interest does not deprive the individual of property or any other right without compensation and thus should not be deemed "punishment" within the ambit of double jeopardy protections.
After Halper and Austin, a majority of courts have held that the forfeiture of contraband per se or derivative contraband does not constitute "punishment" for the purpose of analysis under the double jeopardy clause. See United States v. United States Currency in the Amount of $145,139.00, 18 F.3d 73, 75-76 (2d Cir.), cert. denied sub. nom. Etim v. United States, ___ U.S. ___, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994); United States v. Tilley, 93-1394 (5th Cir. 3/23/94); 18 F.3d 295, 297-300, cert. denied sub. nom. Tilley v. United States, ___ U.S. ___, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994); United States v. Borromeo, 1 F.3d 219, 221 (4th Cir.1993).
Therefore, we conclude that the civil forfeiture of contraband per se or derivative contraband is not "punishment" for the purposes of double jeopardy analysis. The government's taking of property in which the "owner" has never actually had a legal interest does not deprive the individual of property or any other rights without compensation and thus is not deemed "punishment" within the ambit of double jeopardy protections.

RESOLUTION OF THE CASES AT HAND UNDER THE STATE DRUG FORFEITURE ACT AS CONSTRAINED BY THE FEDERAL DOUBLE JEOPARDY PRECEPTS OF HALPER, AUSTIN, AND KURTH RANCH
Under the Drug Forfeiture Act, LSA-R.S. 40:2601 et seq., among the property subject to seizure is property that is furnished or intended to be furnished in exchange for such illegal drugs, LSA-R.S. 40:2604(2)(a); used or intended to be used to facilitate conduct giving rise to forfeiture, LSA-R.S. 40:2604(2)(b); and proceeds of any conduct giving rise to forfeiture, LSA-R.S. 40:2604(3).
Applying the federal precepts to the Drug Forfeiture Act, we conclude that a civil forfeiture of a person's property may constitute punishment for the purposes of federal double jeopardy analysis, if (1) the sanction imposed is overwhelmingly disproportionate to the damages the offender has caused and (2) the sanction bears no rational relation to the goal of compensating the government for the costs it has incurred in investigating and prosecuting the violation. However, to the extent that a civil sanction is fairly characterized as rough remedial justice, i.e. to the extent that a remedial purpose is served, the civil sanction does not constitute "punishment" within the meaning of the double jeopardy clause, unless the sanction is in effect so disproportionate to the government's losses that it can be explained only as serving deterrent or retributive purposes.
Applying this test to the facts of the cases at hand reveals that neither of the forfeitures violates double jeopardy protections. These cases do not present that rare case where the penalty provision subjects the offender to a sanction overwhelmingly disproportionate to the damages he has caused.
With regard to Johnson, he forfeited the $976.00 in currency discovered on his person and in his home after he was arrested for possession of cocaine following a police undercover investigation into drug trafficking. The forfeiture of this amount under the facts and circumstances of this case does not qualify as "overwhelmingly disproportionate" to the damages caused by such drug trafficking. Similarly, the costs of the police investigation leading to Johnson's forfeiture of $976.00 bear a rational relation to the goal of compensating the government for costs incurred in investigating and prosecuting Johnson.
Wilson forfeited a 12-year-old car used to transport cocaine. The evidence presented at the hearing revealed that Wilson acquired *519 the automobile in 1988 for $2,800.00. The evidence showed that the towing and storage fees of such vehicle from the date the items were seized until the date of forfeiture totaled $2,504.50. We cannot say that the forfeiture of this antiquated vehicle under the facts presented herein was an "overwhelmingly disproportionate" civil penalty divorced from any proper remedial purpose so as to offend the Fifth Amendment or that its forfeiture lacked a rational relation to the goal of compensating the government (for the costs and risks incurred by pursuit of the offender and the processing and prosecution of his case).
Therefore, we find that, under the facts and circumstances of the two cases under consideration, the Drug Forfeiture Act does not violate constitutional double jeopardy prohibitions as set out in Halper and its progeny and endorsed by this court in Butler.
In State v. Lester Johnson, No. 94-KK-0595, the judgment of the court of appeal is affirmed.
In State v. 1979 Cadillac Deville, No. 94-C-1077, the court of appeal judgment is vacated, and the district court judgment is reinstated. Proper application of the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989, LSA-R.S. 40:2601 et seq., does not violate the double jeopardy provisions of the Fifth Amendment or LSA-Const. art. 1 § 15. United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); Butler v. Department of Public Safety and Corrections, 609 So.2d 790 (La.1992).
IT IS SO ORDERED.
NOTES
[1] Judge Burrell J. Carter, Court of Appeal, First Circuit, sitting by assignment as Justice Pro Tempore in the vacancy created by the resignation of Justice James L. Dennis. Chief Judge H. Charles Gaudin, Court of Appeal, Fifth Circuit, sitting by assignment as Justice Ad Hoc for Chief Justice Calogero, recused.

Victory, J. recused, not on panel. Rule IV, Part 2, § 3.
[2] The bill of information was amended on July 21, 1993.
[3] Wilson did not argue the issue of forfeiture of the $24.00 in the trial court, nor did he appeal the forfeiture of the currency. As a result, the propriety of the forfeiture of the cash is not before this court.
[4] In Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the defendant was convicted on one count of possession of cocaine with intent to distribute, which involved his possession and sale of two grams of cocaine to an undercover police officer. Following his conviction, the government attempted to seize the defendant's mobile home and automobile body shop by filing an in rem action for their forfeiture.
[5] In United States v. Tilley, 93-1394 (5th Cir. 3/23/94); 18 F.3d 295, the federal appellate court applied the Halper test and determined that the civil forfeiture of unlawful proceeds from the sale of illegal drugs was not "punishment," and thus double jeopardy did not bar a subsequent criminal prosecution of the defendant for illegal sale of drugs. Thereafter, in United States v. Perez, 1995 WL 689385 (5th Cir. 11/21/95); 70 F.3d 345, that same court held that the Halper proportionality test was unnecessary to determine whether the drug-related forfeiture of a vehicle was "punishment" for double jeopardy analysis and that a per se approach to forfeiture was required. The court then determined that the drug-related forfeiture of a vehicle used to transport marijuana was "punishment" for the purposes of the double jeopardy clause and that the criminal prosecution following a civil forfeiture was impermissible. However, we note that the federal circuits' views on federal double jeopardy are not dispositive of this case. State v. Sanders, 93-0001, p. 7 (La.11/30/94), 648 So.2d 1272, 1279.
[6] In Butler v. Department of Public Safety and Corrections, 609 So.2d 790 (La.1992), this court held that the imposition of a jail term and the revocation of a driver's license for the same drunken driving incident does not constitute double jeopardy.