686 So.2d 114 (1996)
STATE of Louisiana
v.
Roberto PEREZ.
No. 95 KA 2445.
Court of Appeal of Louisiana, First Circuit.
December 20, 1996.
*115 Walter P. Reed, District Attorney, William R. Campbell, New Orleans, for Plaintiff-Appellee, State of Louisiana.
John R. Simmons, Jr. and James H. Looney, Covington, for Defendant-Appellant Roberto Perez.
Before WATKINS, KUHN, and GUIDRY,[1] JJ.
WATKINS, Judge.
Roberto Perez was charged by bill of information [2] with one count of possession of four hundred grams or more of cocaine, a violation of LSA-R.S. 40:967(F)(1)(c).[3] Defendant pled not guilty and, after trial by jury, was convicted as charged. The trial court sentenced defendant to serve 50 years at hard labor with the Department of Corrections, 30 years of which are without benefit of parole, probation or suspension of sentence, with credit for time served and to pay a fine of $400,000.
Thereafter, a motion to arrest judgment was filed, alleging a double jeopardy violation. Following remand for a hearing on the matter, the trial court denied the motion. Defendant has appealed, urging two assignments of error.

FACTS
The record reveals that on September 13, 1994, Corporal Donald Palliser with the St. Tammany Parish Sheriff's Department, while on routine patrol along I-12, observed an eastbound gray van switch from the left to the right lane without signaling. Thereafter, the van veered back into the left lane before crossing over the right lane and the fog line. Fearing that the driver was impaired, Corporal Palliser stopped the vehicle.
Corporal Palliser discovered that the vehicle was owned by Mr. Perez and was being driven by Mr. Colarte. Mr. Colarte told the officer that he had been in Houston for two days and was driving back to New Jersey. When the officer asked Ms. Munoz, the passenger in the front seat, where they had been, she stated "somewhere over there." She went on to state that they had visited a cousin of hers in Louisiana. Corporal Palliser obtained the vehicle registration and insurance papers from Mr. Perez, who was seated in the rear of the vehicle. Mr. Perez told Corporal Palliser that he did not remember where they had been. Corporal Palliser stated that all three occupants of the vehicle appeared unusually nervous and kept looking at the ground; thus, he became suspicious. Corporal Palliser called for a narcotics canine which arrived in five to seven minutes. The canine alerted to the presence of narcotics in the vehicle.
Corporal Palliser then asked Mr. Perez for his consent to search the vehicle. A consent to search form was provided in both English and Spanish for defendant to sign. Defendant signed the consent to search form. Thereafter, the canine was taken inside the van where he led the officers to a stash of cocaine concealed in the overhead television/vcr console. Thirteen kilograms of cocaine was discovered in the television/vcr console. After all three occupants were placed under arrest and the vehicle was impounded, another 37 kilograms of cocaine was discovered in the rear portion of the van. A total amount of 50 kilograms, about 110 pounds, of cocaine was found inside the vehicle, with an approximate street value in excess of $1.25 million.
Mr. Perez argues in his two assignments of error that the trial court erred: when it denied his motion for mistrial relating to comments made by the prosecutor in his closing argument; and when it failed to find *116 that the instant conviction violated the prohibition against double jeopardy.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendant argues that the trial court erred when it denied a motion for mistrial pursuant to LSA-C.Cr.P. art. 771(1) for comments made by the prosecutor in closing argument.
This assignment of error is dealt with more completely in State v. Colarte, 96-0670 (La.App. 1st Cir. 12/13/96); ___ So.2d ___. In Colarte, this court ruled that it was not an abuse of discretion for the trial court to refuse to grant a mistrial under LSA-C.Cr.P. art. 771 and that the admonition given by the trial court was sufficient to insure that this defendant received a fair trial.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWO
In his second and final assignment of error, defendant contends that his criminal prosecution, following a civil forfeiture of his vehicle, constitutes double jeopardy in violation of his constitutional rights.
The record reveals that the state filed civil forfeiture proceedings against defendant in the district court, under docket number 94-14014. Defendant maintains that the value of the vehicle which was forfeited was approximately $27,000. Lt. Tim Lentz testified that the sale price of the vehicle was $26,000. Furthermore, Lt. Lentz stated that there was a $20,000 lien on the vehicle, which GMAC settled for $15,000. Lt. Lentz also testified that other costs were associated with the forfeiture in question. For instance, because of the extensive damage to the vehicle while removing the contraband cocaine, $1,500 in repairs was necessary.
In State v. Colarte, 96-0670, p. ___; ___ So.2d ___; handed down this date, this issue was discussed as it applied to a codefendant. In Colarte, this court analyzed the recent United States and Louisiana Supreme Court jurisprudence concerning double jeopardy arising from a civil forfeiture. Therein, we determined that the civil forfeiture at issue did not violate the proscription against double jeopardy.
In the instant case, applying the jurisprudence cited in Colarte, namely State v. Johnson, 94-0595 and 94-1077 (La.1/16/96); 667 So.2d 510 and United States v. Ursery, ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), we find no double jeopardy violation.
Applying the two-part Johnson test (i.e., does the civil penalty (1) impose a sanction overwhelmingly disproportionate to the damages the offender has caused and (2) bear no rational relation to the goal of compensating the government for the cost it has incurred in investigating and prosecuting the violation) to the instant case, we find the record reveals that Lt. Lentz stated the costs of investigation would be difficult to calculate, because the investigation involved not only the Sheriff's Department, but also law enforcement agencies from other states as well as the Drug Enforcement Administration. He estimated that approximately $1,590 was expended on Sheriff's Department payroll. Lt. Lentz also discussed other costs to the Sheriff's Department, such as the daily cost of confinement and the costs associated with maintenance of a narcotics canine. Finally, he estimated the street value of the cocaine which was seized at $1.25 million. The prosecutor testified that the costs to his office included 38.5 hours for trial preparation, up to 50 hours of appellate and post conviction work. Furthermore, the District Attorney's office employed an investigator in this case. Thus, as in Johnson, this case does not appear to this court to be "that rare case where the penalty provision subjects the offender to a sanction overwhelmingly disproportionate to the damages he has caused." Johnson, 94-0595 & 1077, p. 14; 667 So.2d at 518.
Defendant maintains that his case is distinguishable from Johnson primarily because the value of the vehicle is greater in this case. Although there is no disputing that the forfeited vehicle was worth more in this case than the vehicle at issue in Johnson, it is also true that the amount of societal damage is much greater in this defendant's case. Thus, we reject defendant's distinction.
*117 The Louisiana Supreme Court, citing its previous decision of State v. Manuel, 426 So.2d 140, 144 (La.1983), explained that there are two kinds of property which may be classified as contraband:
Things which intrinsically are illegal to possess and are therefore insusceptible of ownership are categorized as contraband per se. Such articles include illegal narcotics, unregistered stills, unlawful alcohol, and illicit gambling devices. Things which may be forfeited because they are the immediate instrumentalities of a crime, but which are not ordinarily illegal to possess, are classified as derivative contraband. Derivative contraband encompasses guns, automobiles, ships and other such property when used to effectuate a proscribed activity. (Citation omitted.) (Emphasis added.)
The Johnson Court went on to state:
Based on the Supreme Court decisions, federal and state appellate cases, and self evident principles, the civil divestiture of contraband per se or any direct or indirect "proceeds" of illegal drug sales, i.e., any property obtained from or traceable to the sale, exchange, or transfer of contraband drugs should not be characterized as either a "forfeiture" or "punishment" for the purposes of double jeopardy analysis. The terms "forfeiture" and "punishment" are commonly used to mean the imposition of a loss by the taking away of some preexisting valid right without compensation, Black's Law Dictionary 650 (6th ed.1990), and `[a] deprivation of property or some right.' Black's Law Dictionary at 1234. The government's taking of property in which the "owner" has never actually had a legal interest does not deprive the individual of property or any other right without compensation and thus should not be deemed "punishment" within the ambit of double jeopardy protections.
Johnson, 94-0595 & 1077, p. 12; 667 So.2d at 517-518.
In the instant case, the vehicle which was forfeited constituted derivative contraband, as it was used to transport illegal drugs. Thus, under Johnson, it does not appear that the forfeiture of this property constitutes a punishment.
Further, it appears that the two-part test utilized in Johnson may have been abrogated by subsequent United States Supreme Court jurisprudence. Based on Ursery, which held that civil forfeitures do not constitute "punishment" for double jeopardy purposes, it appears that the civil in rem forfeiture at issue in the instant case cannot be considered as a punishment.
Whether this court applies the two-part Johnson test, classifying the vehicle as derivative contraband or applies the more permissive per se rule in Ursery, the instant forfeiture of defendant's vehicle does not constitute double jeopardy. Pursuant to the latest United States and Louisiana Supreme Court cases, the instant in rem civil forfeiture cannot be considered as a "punishment" under the double jeopardy clauses of the United States and Louisiana Constitutions. Thus, this assignment of error has no merit.

PATENT ERROR
Additionally, in his brief to this court, although not an assignment of error, defendant has made a request for a patent error review. This court routinely reviews the record for errors patent, whether or not such a request is made by a defendant. Under LSA-C.Cr.P. art. 920(2), we are limited in our patent error review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible patent errors.
However, we have discovered that the trial court did not wait the required 24 hours after denial of defendant's motion for new trial and motion for post-verdict judgment of acquittal before imposing sentence. See LSA-C.Cr.P. art. 873. When the trial court announced its intention to proceed with the sentencing, defense counsel responded by saying, "Your Honor, before that happens, I believe there are some motions for Mr. Perez that should be in the record. I filed them a while back." The trial judge denied both motions and proceeded to sentence defendant.
*118 In State v. Augustine, 555 So.2d 1331, 1333-1334 (La.1990), the Louisiana Supreme Court held that a trial court's failure to observe the 24-hour delay is not harmless error if the defendant assigns the failure as error, challenges the sentence on appeal, or demonstrates prejudice.
In the instant case, defendant did not assign the failure to wait the required 24 hours as error, challenge his sentence or demonstrate any prejudice. Further, by requesting that the court rule on the defense motions before proceeding with the sentencing, defendant implicitly waived the waiting period. See State v. Lindsey, 583 So.2d 1200, 1206 (La.App. 1st Cir.1991), writ denied, 590 So.2d 588 (La.1992). Thus, any error which occurred is not reversible. See State v. Claxton, 603 So.2d 247, 250 (La.App. 1st Cir. 1992).

ASSIGNMENTS RELATING TO CODEFENDANT
Defendant adopts by reference the arguments and assignments of error of his codefendant. For reasons more fully expressed in State v. Colarte, 96 KA 0670, we find no merit in defendant's adoption of his codefendant's arguments.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Judge Carl A. Guidry, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Barbara Munoz and Walfrido S. Colarte were also charged in the same bill of information. Ms. Munoz was acquitted; Mr. Colarte was convicted, and his appeal, bearing docket number 96 KA 0670, was handed down on this date.
[3] We note that the statutory citation included in the bill of information is inaccurate. The state cited LSA-R.S. 40:967(F)(c); however, the proper citation is LSA-R.S. 40:967(F)(1)(c). Such error is not reversible as defendant was not prejudiced. See LSA-C.Cr.P. art. 464; State v. Domangue, 93-1953, p. 3 (La.App. 1st Cir. 12/22/94); 649 So.2d 1034, 1037.