697 So.2d 699 (1997)
STATE of Louisiana, Plaintiff-Appellee,
v.
Charles E. GILES, et al., Defendant-Appellant.
No. 29695-CA.
Court of Appeal of Louisiana, Second Circuit.
June 18, 1997.
*700 Piper & Associates by Anthony Hollis, Shreveport, for Defendant-Appellant.
State of Louisiana Drug Asset Recovery Team by John J. Williams, Jr., Covington, for Plaintiff-Appellee.
Before MARVIN, C.J., and CARAWAY and PEATROSS, JJ.
CARAWAY, Judge.
We are asked to decide whether a summary judgment granted by the trial court to the State of Louisiana was appropriate in this instance where the state, acting under the authority of the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989, La. R.S. 40:2601 et seq. (hereinafter the "Act"), seized various property items and currency from the claimant, Charles E. Giles ("Giles"), valued at approximately $44,000. Because we find that the state has failed to meet its burden of showing no issues of material fact, we reverse the summary judgment granted in favor of the state and remand this case to the trial court for further proceedings.

Facts and Procedural History
The information serving as the substantive basis of this action is contained in a document *701 attached to the state's petition for forfeiture, which the petition references as a "Warrant of Seizure." This "Warrant of Seizure" is an undated and unsworn report signed by Deputy Jarrett Ketchum of the Bienville Parish Sheriff's Office, and no judicial action is reflected on the document formally issuing a warrant of seizure pursuant to Section 2606 of the Act. The petition further states that this "Warrant of Seizure" was utilized on August 13, 1993 to seize for forfeiture all the disputed property, and therefore, it apparently was the information provided to the judge for the requested seizure as an attempt to comply with the provisions of Section 2606(A).
Deputy Ketchum stated in the "Warrant of Seizure" that on August 3, 1993, he received information from a reliable confidential informant that Charles E. Giles had just returned from a trip to Texas with a load of marijuana. The informant also told Ketchum that Giles would be leaving Giles Liquor Store in Gibsland and traveling to Minden with a quantity of marijuana. Ketchum and other officers proceeded to the area and set up a surveillance. Ketchum states that about five minutes after they arrived, they observed Giles traveling west on I-20. Deputy Ketchum requested a Bienville Parish Sheriff's unit to intercept Giles, who was traveling in the westbound lane of I-20 heading toward Minden. According to Ketchum, Giles was observed by Trooper Ted Raley throwing a brown paper bag out of the passenger window of the vehicle, a 1984 Olds 98. Ketchum stated in the "Warrant of Seizure" that laboratory tests showed that the bag contained 1½ pounds of marijuana.
Giles was arrested, and police seized the Oldsmobile Giles was driving and $3,005.00 that Giles was carrying in his coat pocket. Agents then went to Giles Liquor Store in Gibsland and obtained consent to search the premises from Giles' wife, Martha Giles. There they found an additional 6½ pounds of marijuana and $580.00, which they also seized.
As further detailed in the "Warrant for Seizure," nine days after Giles' arrest, on August 12, 1993, Deputy Ketchum executed a search warrant on a safety deposit box at the Gibsland Bank & Trust in Gibsland, Louisiana rented by Charles and Martha Giles. Deputy Ketchum found in the box $6,050.00 in U.S. Savings Bonds. Deputy Ketchum also found that Giles had $22,488.66 in a joint savings account with Giles' mother, Rosa. Finally, the "Warrant of Seizure" stated the following regarding two additional vehicles which also are the subject of this suit:
Affiant [Deputy Ketchum] through CI information and Motor Vehicle records knows that Giles also owns a 1967 Pontiac GTO LA Lic # 868X697 that is specially equipped with a high performance engine that Giles uses to make local drug deliveries and was purchased and is maintained with drug proceeds.... Giles also owns a 1988 Ford Bronco LA Lic # S272015. This vehicle was purchased 2-19-93 and is being paid for and maintained with funds believed by Affiant to be proceeds of drug sales.
On November 8, 1993, the state instituted this action styled as a Petition for Forfeiture In Rem Action under the authority of La. R.S. 40:2601 et seq. In the petition, the state alleges that the property sought to be forfeited was seized by the Bienville Parish Sheriff's Office within the confines of Bienville Parish and consisted of:
A. Twenty six thousand eighty three and 65/100 ($26,083.65) dollars in U.S. currency.
B. Three thousand one hundred and no/ 100 ($3,100.00) dollars in U.S. currency.
C. Six thousand fifty and no/100 ($6,050.00) dollars in U.S. Savings Bonds, payable to Charles E. Giles, as follows:
# L487838962EE in the amount of $50.00 purchased 1/3/92
# M38223562EE in the amount of $1000.00 purchased 1/3/92
# M38223587EE in the amount of $1000.00 purchased 1/3/92
# M38223583EE in the amount of $1000.00 purchased 1/3/92
# M38223581EE in the amount of $1000.00 purchased 1/3/92
# M38223578EE in the amount of $1000.00 purchased 1/3/92

*702 # M38223586EE in the amount of $1000.00 purchased 1/3/92
D. One (1) 1984 Oldsmobile, VIN # 1G3AG37Y3EM710989
E. One (1) 1988 Ford Bronco II, Vin # 1FMCU14T3JUA44902
F. One (1) 1967 Pontiac GTO, Vin # 242177K130536
G. Approximately eight (8) pounds of marijuana.
The petition further alleges that the property is worth approximately $44,000.00 and that probable cause is set out in the above described statements by Deputy Ketchum in the "Warrant of Seizure" which was attached to the petition. The state alleges that the items above sought for forfeiture are proceeds of Charles E. Giles' drug enterprise or were used to facilitate the enterprise. Giles and his mother were served with the petition.
On October 21, 1994, Giles filed his claim to the disputed property in the form of an affidavit pursuant to Section 2610 wherein he alleges that the items seized were not connected with any offense set forth in La. R.S. 40:2604 and that they were not used in connection with the transportation of contraband or used to facilitate unlawful drug activity. A Supplemental Answer to the petition of the state was filed on October 27, 1994 setting forth a detailed statement of the claimant's interest in the property. Giles further claimed that he was unable to set forth the exact dates of acquisition of all the properties in question because the seizing authorities had also seized his records.
The state subsequently moved for summary judgment claiming that there were no issues of fact regarding its claim that the property in question was obtained from proceeds of drug deals or used in drug deals. Attached to the State's motion, as its only supporting evidence, was an affidavit by Deputy Ketchum dated June 12, 1996. The affidavit reported two convictions of Giles, as follows:
Giles' has convictions in Bienville Parish for possession with intent to distribute marijuana, record # 29682, and in Webster Parish possession of marijuana, record # 57747. In the Bienville Parish case 6-1/2 lbs. of marijuana was seized from Giles' bar room and 1-1/2 lbs. was seized from his car.
Other than this statement, which is apparently an undetailed reference to the August 3, 1993 drug crimes alleged in the petition and "Warrant of Seizure," Deputy Ketchum's affidavit reflects nothing linking any of the subject property to these convictions. No documents from the referenced criminal prosecution were presented as the best evidence of the conviction.
Deputy Ketchum's affidavit also lists information reported to him by others and asserts that Giles was the source of numerous marijuana sales in the area, and that Giles had pending cases for other arrests in Texas in 1993 and 1994. None of these reports of criminal misconduct were described as involving any of the specific property which is the subject of this forfeiture.
Finally, Deputy Ketchum's affidavit states an analysis of certain income and personal expense data purportedly produced by Giles in response to the state's discovery. The analysis concludes that the $35,233.65 seized by the State in this action in the form of cash or cash-related assets must be the product of the sale of illegal substances because Giles' recent earnings capacity demonstrated no ability to accumulate those assets.
Following the trial court's grant of the motion for summary judgment awarding the state the property in question, Giles appeals alleging that the court erred in finding that there were no issues of material fact and in finding that the state was entitled to summary judgment simply because Giles filed no counter-affidavit.

Law
Recently, the highest courts of our nation and state had occasion to discuss civil forfeitures in the context of constitutional double jeopardy claims. Our courts have upheld these forfeitures provided the connection between the conduct giving rise to forfeiture and the contraband that is subject to forfeiture is shown. In explaining the governmental purpose behind civil forfeitures, the United States Supreme Court, in U.S. v. Ursery, *703 ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), stated:
Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government. Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct.

Id. at ___, 116 S.Ct. at 2145. (Emphasis added).
Similarly, in State v. Johnson, Nos. 94-KK-0595 and 94-C-1077 (La.1/16/96), 667 So.2d 510, while explaining why forfeiture of contraband is not punitive, our supreme court defined contraband as follows:
[T]here are two kinds of property which may be classified as contraband [ ... ]:
Things which intrinsically are illegal to possess and are therefore insusceptible of ownership are categorized as contraband per se. Such articles include illegal narcotics, unregistered stills, unlawful alcohol, and illicit gambling devices. Things which may be forfeited because they are the immediate instrumentalities of a crime, but which are not ordinarily illegal to possess, are classified as derivative contraband. Derivative contraband encompasses guns, automobiles, ships and other such property when used to effectuate a proscribed activity.

Id. at 517 citing State v. Manuel, 426 So.2d 140 at 144 (La.1983). (Emphasis added).
Obviously, then, the property seized must have connexity with the criminal activity either as being an illegal thing itself, i.e., contraband per se, or by constituting an instrument of the crime not ordinarily illegal to possess, i.e., derivative contraband. Additionally, we note the Louisiana Constitution in discussing forfeitable property further lists "property derived in whole or in part from contraband drugs,"[1] which may be considered as the fruits of illegal drug trafficking. These different classes of property and how they may become subject to forfeiture through their connexity with the illegal drug activity are recognized in Section 2604[2] of the Act.
In a forfeiture proceeding, the state is required to show "probable cause for forfeiture" under the Act. La. R.S. 40:2612G states:
The issue shall be determined by the court alone, and the hearing on the claim shall be held within sixty days after service of the petition unless continued for good cause. The district attorney shall have the initial burden of showing the existence of probable cause for forfeiture of the property. If the state shows probable cause, the claimant has the burden of showing by a *704 preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture. (Emphasis ours)
The evidence admissible for meeting the state's burden can be the same as that admissible in determining probable cause at a preliminary hearing or by a judge in issuing a search warrant. La. R.S. 40:2611(F); La. C.Cr.P. arts. 162 and 294.
Because of the similarity of the Act with the federal forfeiture statutes, the Louisiana courts have considered the federal jurisprudence in applying the Act. State v. Johnson, supra. In the federal system where probable cause for forfeiture is also the relevant inquiry, "probable cause" has been defined as a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." U.S. v. One 1987 Mercedes 560 SEL, 919 F.2d 327, 331 (5th Cir.1990) (citation omitted). "It may be established by demonstrating `by some credible evidence, the probability that the money was in fact drug related.' " Id. (Emphasis in original) (citations omitted). Probable cause can be established by circumstantial evidence or evidence that would be inadmissible at trial, so long as the evidence is reliable. U.S. v. Parcels of Land, 903 F.2d 36, 38 (1st Cir.1990). Though this probable cause burden and the permissible evidence required to meet the burden amount to something less than the burden of proof in an ordinary civil proceeding, the United States Fifth Circuit Court of Appeal has recognized that as to the issue of the connexity of the property to the crime, the government's burden requires "probable cause for belief that a substantial connection exists." U.S. v. $364,960 in U.S. Currency, 661 F.2d 319, 323 (5th Cir.1981) (emphasis added).
Thus, the state must show "probable cause for forfeiture" by demonstrating the existence of two elements which demonstrate the connexity of the property with the criminal conduct to the degree of proof required at a preliminary hearing or required to obtain a warrant to search or seize, namely, "probable cause." These two elements are:
(1) the claimant is guilty of conduct giving rise to forfeiture which involves the possession, distribution or other conduct related to an illegal drug; (La. R.S. 40:2603) and,
(2) the property in question is subject to forfeiture. (La. R.S. 40:2604)
In this case we are called upon to determine if the state has met its burden of showing probable cause for forfeiture in the context of a motion for summary judgment. See La. R.S. 40:2612F. The mover for summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. To satisfy this burden, the mover must meet a strict standard of showing that the material facts are quite clear and exclude any real doubt. Supporting and opposing affidavits shall be made on personal knowledge and shall set forth facts that would be admissible in evidence at trial. La. C.C.P. art 967. Langley v. Oxford Chemicals, Inc., 559 So.2d 520 (La.App. 2d Cir. 1990).
On a motion for summary judgment, the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material factual issues. If insufficient, summary judgment must be denied. If sufficient, the burden shifts to the party opposing the motion to present evidence that material facts are still at issue. Commercial Nat. Bank in Shreveport v. Dance, 27,337-CA (La.App.2d Cir. 9/27/95), 661 So.2d 551.

Analysis
In the instant case, the state has generally referred to two documents in support of its motion as showing probable cause for forfeiture. The first document, which was attached to the petition for forfeiture as the "Warrant of Seizure," is an undated and unsworn statement signed by Deputy Ketchum. An unsworn and unverified document is not of sufficient evidentiary quality as to be given weight in determining whether or not there is a genuine issue of material fact. Langley, supra; Parker v. Sears, Roebuck & Co., 418 So.2d 1361 (La.App. 2d Cir.1982); Continental Casualty Co. v. McClure, 313 So.2d 260 (La.App. 4th Cir.1975). This document, therefore, has no evidentiary value in the state's motion for summary judgment. It is merely an attachment to the petition, and as *705 such, it is merely an extension of the allegations of the petition which the defendant disputes.
What remains is a second and less detailed report of Deputy Ketchum submitted by the state in the form of a sworn affidavit filed with the motion for summary judgment. Although this document does attest to criminal conduct by Charles E. Giles that may constitute the first prong of the probable cause showing, i.e., "conduct giving rise to forfeiture," there is no factual showing of how the subject property, other than the eight pounds of marijuana, was connected to the crimes. This is to say, the state does not show that the property seized is "property subject to forfeiture." La. R.S. 40:2604.
The remainder of the affidavit consists of accounts of Giles's income tax returns from 1988 to 1992 and estimates by Deputy Ketchum of Giles's living expenses based upon some discovery responses by Giles. Deputy Ketchum concludes that Giles's expenses are on average $12,000 per year greater than his income. In this case, $35,233.65 of the seized property consisted of currency, cash accounts or bonds which were presumably obtained, but not stated in the affidavit, around the time of defendant's 1993 arrest as detailed in the "Warrant of Seizure." Few facts linking the property to the drug trafficking are present in the affidavit, however, there are numerous conclusions to that effect. We simply do not agree that the facts vaguely detailed in the affidavit raised substantial inferences amounting to something more than mere speculation. The fact that there is a discrepancy between Giles' reported income and his living expenses does not show a connection between the seized cash-related assets and the illegal drug dealings.
The federal cases relied upon by the state are procedurally and factually inapposite. For example, in U.S. v. One 1987 Mercedes 560 SEL, 919 F.2d 327 (5th Cir.1990), incorrectly cited by the state as a summary judgment case, the court affirmed the district court's finding of probable cause for forfeiture, stating that "[a]t trial, the government introduced evidence to show that Jones [the appellant accused of drug trafficking] had opened a bank account the day after a large shipment of marijuana had been brought in by his nephew and Jones income from his construction company was insufficient to support the large deposits he had made to this account." Id. at 329. (Emphasis ours) In contrast to the sums at issue in the instant case, Jones had deposited over $315,000 dollars in the account.
In U.S. v. Parcels of Land, 903 F.2d 36 (1st Cir.1990), the district court granted the government's motion for summary judgment where the government introduced several affidavits and other reliable evidence that the claimant, who had an average annual income of only $27,690, had spent literally millions of dollars in the same time period, dealing primarily in cash. The court noted that the sheer quantity of the currency could support an inference of drug trafficking, but there was additional evidence linking the claimant to drug trafficking activities to strengthen this inference.
In short, the affidavit submitted by the state does not reach the quality of evidentiary proof necessary to show probable cause. Even with the state's lower burden of proof, Deputy Ketchum's affidavit does not establish a credible and substantial connection between the alleged drug related arrests, of which no facts are given, and the cars, currency, bonds and other property seized. We conclude that the state has failed to show probable cause for forfeiture of all the property seized in this instance that is not contraband per se. In contrast to U.S. v. Parcels of Land, supra, where the government "assembled a considerable amount of evidence to establish its claim that the defendant properties constituted the proceeds of drug trafficking activity," the state has assembled scant evidence to prove its case through the summary judgment procedure. Id. at 39.
In conclusion, in view of the different circumstances surrounding the various properties seized in this case as alleged in the petition, we emphasize that the Louisiana Supreme Court in State v. Johnson, supra, a case involving money seized from a defendant in possession of cocaine, characterized seizeable "proceeds" of illegal drug sales as "any property obtained from or traceable to *706 the sale, exchange, or transfer of contraband drugs." 667 So.2d at 517-518. (Emphasis ours) Thus, while a sufficient inference exists that money seized from the person of a defendant at the time of his arrest for drug possession or distribution may be proceeds of drug sales or property intended to be used to facilitate conduct giving rise to forfeiture, we are concerned that some of the properties in this action are not tainted by such inference, and the state's burden on remand of this case will necessarily require more specific evidence tracing the property to criminal conduct giving rise to forfeiture so that a substantial connection between the property and the crime is demonstrated.
Accordingly, the trial court's summary judgment in favor of the state in this case is reversed and we vacate the award of costs and attorney fees rendered in that judgment. We remand the case to the district court.
REVERSED AND REMANDED.
NOTES
[1] La. Const. Art. I, § 4. Right to Property states, in pertinent part:

Personal effects shall never be taken. But the following property may be forfeited and disposed of in a civil proceeding, as provided by law: contraband drugs; property derived in whole or in part from contraband drugs; property used in the distribution, transfer, sale, felony possession, manufacture, or transportation of contraband drugs; property used or intended to be used to facilitate any of the above conduct; or other property because the above described property has been rendered unavailable. (Emphasis ours).
[2] § 2604. Property subject to forfeiture

The following property is subject to seizure and forfeiture as contraband, derivative contraband, or property related to contraband under the provision of Section 4 of Article I of the Constitution of Louisiana:
(1) All controlled substances, raw materials, or controlled substance analogues that have been manufactured, distributed, dispensed, possessed, or acquired in violation of R.S. 40:961 et seq.
(2) All property that is either:
(a) Furnished or intended to be furnished by any person in exchange for a controlled substance in violation of R.S. 40:961 et seq.
(b) Used or intended to be used in any manner to facilitate conduct giving rise to forfeiture, provided that a conveyance subject to forfeiture solely in connection with conduct in violation of R.S. 40:961 et seq. may be forfeited only pursuant to the provisions of this Chapter.
(3) Proceeds of any conduct giving rise to forfeiture.
(4) All weapons possessed, used, or available for use in any manner to facilitate conduct giving rise to forfeiture.
(5) Any interest or security in, claim against, or property or contractual right of any kind affording a source of control over any enterprise that a person has established, operated, controlled, conducted, or participated in the conduct of through conduct giving rise to forfeiture.