688 So.2d 587 (1996)
STATE of Louisiana
v.
Walfrido S. COLARTE.
No. 96 KA 0670.
Court of Appeal of Louisiana, First Circuit.
December 20, 1996.
Rehearing Denied March 19, 1997.
*589 Walter Reed, District Attorney, William R. Campbell, Jr., New Orleans, for Plaintiff-Appellee State of La.
John H. Musser, IV, New Orleans, for Defendant-Appellant Walfrido S. Colarte.
Before WATKINS and KUHN, JJ., and GUIDRY,[1] J. Pro Tem.
*590 WATKINS, Judge.
Walfrido S. Colarte was charged by bill of information[2] with one count of possession of four hundred grams or more of cocaine, a violation of LSA-R.S. 40:967(F)(1)(c).[3] Defendant pled not guilty and, after trial by jury, was convicted as charged. The trial court sentenced defendant to serve 40 years at hard labor with the Department of Corrections, 30 years of which are without benefit of parole, probation or suspension of sentence, with credit for time served; and to pay a fine of $400,000.
Thereafter, a motion to arrest judgment was filed, alleging a double jeopardy violation. Following remand for a hearing on the matter, the trial court denied the motion. Defendant has appealed, urging eleven assignments of error, which were combined into six arguments for this appeal.

FACTS
The record reveals that on September 13, 1994, Corporal Donald Palliser with the St. Tammany Parish Sheriff's Department, while on routine patrol along I-12, observed an eastbound gray van switch from the left lane to the right lane without signaling. Thereafter, the van veered back into the left lane before crossing over the right lane and the fog line. Fearing that the driver was impaired, Corporal Palliser stopped the vehicle.
Corporal Palliser discovered that the vehicle was owned by Mr. Perez and was being driven by Mr. Colarte. Mr. Colarte told the officer that he had been in Houston for two days and was driving back to New Jersey. When the officer asked Ms. Munoz, the passenger in the front seat, where they had been, she stated "somewhere over there." She went on to state that they had visited a cousin of hers in Louisiana. Corporal Palliser obtained the vehicle registration and insurance papers from Mr. Perez, who was seated in the rear of the vehicle. Mr. Perez told Corporal Palliser that he did not remember where they had been. Corporal Palliser stated that all three occupants of the vehicle appeared unusually nervous and kept looking at the ground; thus, he became suspicious and called for a narcotics canine which arrived in five to seven minutes. The canine alerted to the presence of narcotics in the vehicle.
Thereafter, Corporal Palliser asked Mr. Perez for his consent to search the vehicle. A consent to search form was provided in both English and Spanish for Mr. Perez to sign. Mr. Perez signed the consent to search form. Thereafter, the canine was taken inside the van where he led the officers to a stash of cocaine concealed in the overhead television/vcr console. Thirteen kilograms of cocaine was discovered in the television/vcr console. After all three occupants were placed under arrest and the vehicle was impounded, another 37 kilograms of cocaine was discovered in the rear portion of the van. A total amount of 50 kilograms (about 110 pounds) of cocaine was found inside the vehicle with an approximate street value in excess of $1.25 million.
Mr. Colarte argues in his six assignments of error that: 1) the trial court erred when it denied his motion to suppress as a result of an allegedly illegal stop and illegal search; 2) the trial court erred when it denied his motion for mistrial relating to comments made by the prosecutor in his closing argument; 3) there was insufficient evidence to convict; 4) the trial court erred when it failed to grant a mistrial or hold a hearing to determine whether or not Mr. Colarte's attorney had a conflict of interest; 5) the sentence imposed was excessive; and, 6) the instant conviction violated the prohibition against double jeopardy.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues in his first assignment of error that the trial court erred when it denied *591 his motion to suppress, because Corporal Palliser was not justified in stopping the vehicle being driven by defendant. He maintains that there was no violation per se of LSA-R.S. 32:79,[4] dealing with improper lane usage.
The record reveals that Corporal Palliser stopped the instant vehicle after it switched from the left lane to the right lane without signaling, veered back into the left lane, and crossed over the right lane and the fog line. Corporal Palliser stated that it was his belief that the driver was impaired. Further, he issued a warning citation to defendant for no lane change signal and improper lane usage.
The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as both federal and state jurisprudence. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether or not the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Pautard, 485 So.2d 909, 911 (La.1986). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal conduct. Pautard, 485 So.2d at 911. A law enforcement officer may stop a person in a public place when he reasonably suspects he is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. State v. McHugh, 92-1852 (La.1/6/94); 630 So.2d 1259, 1263. Thus, an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, or there must be reasonable grounds to believe that the person has committed or is wanted for past criminal conduct. McHugh, 92-1852; 630 So.2d at 1263.
In State v. Williams, 560 So.2d 899 (La. App. 1st Cir.), writ denied, 565 So.2d 948 (La.1990), this court held that an investigatory stop was permissible where defendant crossed a double yellow centerline, forcing a state trooper off the road. In State v. Vincelli, 555 So.2d 21 (La.App. 1st Cir.1989), this court held that an investigatory stop was permissible where defendant's right tires crossed onto the shoulder three times within a quarter of a mile.
In State v. Shoemaker, 569 So.2d 169, 172 (La.App. 1st Cir.1990), writ denied, 572 So.2d 73 (La.1991), this court noted that a trial court's determination on a motion to suppress that a state trooper did not intentionally precipitate an encounter was a credibility determination that should not be disturbed unless manifestly erroneous.
In the instant case, the record reflects that defendant's driving was highly unusual and a deviation from the norm. Thus, it was not unreasonable for Corporal Palliser to initiate an investigatory stop for the purpose of ascertaining the condition of the driver and to insure the safety of other drivers as well as passengers in defendant's vehicle. The circumstances of this case, including the issuance of the warning citation, reveal that defendant was not stopped on any pretextual basis. Since there was a reasonable basis for Corporal Palliser to stop defendant and the trial court found Corporal Palliser's version of the facts to be credible, we find that the trial court did not commit error when it denied defendant's motion to suppress for this reason.
Defendant also maintains that it was improper for Corporal Palliser to continue to *592 question the occupants of the vehicle after he ascertained that the driver was not impaired and issued the warning citation. However, the record reveals that Corporal Palliser stated that, while he checked the NCIC computer system to see if the van was stolen or if the occupants had outstanding warrants, he questioned the occupants. They gave conflicting stories and acted unusually nervous throughout the encounter. Further, it was determined that Mr. Perez had been arrested in New Jersey for cocaine distribution, and Mr. Colarte had been arrested on weapons charges. During this period of time, an officer with a canine arrived and alerted to the door of the vehicle. The owner of the vehicle also signed a consent to search form. The entire encounter from the original stop until the consent to search form was signed lasted approximately seventeen minutes.
In the instant case, the continued questioning of the occupants of the vehicle following the investigatory stop was not unreasonable under the circumstances. Based on the actions of the occupants, Corporal Palliser had sufficient knowledge to justify a reasonable suspicion that a crime may have occurred. Thus, the trial court did not err when it denied defendant's motion to suppress. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, defendant maintains that the trial court erred in failing to grant a mistrial when the prosecutor made a reference to defendant's post-arrest silence in his closing argument.
This assignment of error is based on the following colloquy during the prosecutor's closing argument:
BY MR. GARDNER: [THE PROSECUTOR]
* * * * * *
As soon as the dog got in the van, the dog hit on the front compartment. They [the police officers] looked and found the drugs and what happened next? The next thing Palliser told you is that he walked out, placed all of them [the defendants] under arrest, that they put their heads down. No statement by him that they were being arrested for cocaine. With that alone, is that sufficient for you to gain some insight as to the knowledge component? Think about what a reasonable person might do under that same set of circumstances. If this case ended right at that point and that was the testimony you heard, would that testimony alone provide insight as to the specific intent of each of those parties and whether they had knowledge that there was illegal contraband.
BY MR. FONTENOT: [DEFENDANT'S COUNSEL]
I'm sorry to interrupt, but could we approach briefly?
(AT THIS TIME, THE FOLLOWING DISCUSSION WAS HELD AT THE BENCH:)
BY MR. FONTENOT:
At this time, I'm moving for a mistrial based on the fact that the prosecuting attorney has made an issue in closing argument of the fact that after the defendant was arrested and given his Miranda rights that he did not say anything, and therefore, somehow his silence is somehow incriminating or shows guilty intent because that is a reference to his legal right to remain silent. I move for a mistrial.
BY THE COURT:
I deny the mistrial, but I will as a cautionary measure instruct them in the following way, that a person accused of a crime always has the right to remain silent and no inference can be made by his doing so.
BY MR. FONTENOT:
And then I would also just ask you to be cautious for the rest of your statement concerning Perez testifying or anything like that.
(IN OPEN COURT:)
BY THE COURT:
I will caution the jury t[o] keep in mind, and it will be included in the instructions, that anyone accused on [sic] a crime has a right to remain silent. No inference can be made or you cannot hold it against *593 anyone accused because of the fact that they remained silent. Keep that in mind.
Thereafter, the prosecutor continued with his argument with no further reference to defendant's silence.
LSA-C.Cr.P. art. 770(3) provides for a mandatory mistrial when a remark or comment is made by the judge, the district attorney, or a court official during the trial within the hearing of the jury and such remark or comment refers directly or indirectly to the failure of the defendant to testify in his own defense. When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and "it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence." Nor, in the case of a direct reference, will this Court attempt to determine the effect that the remark had on the jury. State v. Johnson, 541 So.2d 818, 822 (La. 1989) quoting State v. Fullilove, 389 So.2d 1282, 1284 (La.1980). Where the reference to the defendant's failure to take the stand is not direct, this court will inquire into the remark's "intended effect on the jury" in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from general statements that the prosecution's case is unrebutted (which are permissible). Johnson, 541 So.2d at 822. In the instant case, the prosecutor's comments were an indirect reference to defendant's post-arrest silence. Thus, this article is inapplicable in the instant case.
LSA-C.Cr.P. art. 771 provides for a discretionary mistrial, as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
* * * * * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
The United States Supreme Court has held that, because an accused's post-arrest silence is "insolubly ambiguous" and a jury is apt to draw inappropriate inferences from the fact that a defendant chose to remain silent, "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Doyle v. Ohio, 426 U.S. 610, 617 & 619, 96 S.Ct. 2240, 2244-45, 49 L.Ed.2d 91 (1976).
The Louisiana Supreme Court has indicated that, under the authority of Article 771 of the Code of Criminal Procedure, where the prosecutor or a witness makes a reference to a defendant's post-arrest silence, the trial court is required, upon the request of the defendant or the state, promptly to admonish the jury. In such cases where the court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, upon motion of the defendant, the court may grant a mistrial. See State v. Kersey, 406 So.2d 555, 560 (La.1981); State v. Stelly, 93-1090 (La.App. 1st Cir. 4/8/94); 635 So.2d 725, 728, writ denied, 94-1211 (La.9/23/94); 642 So.2d 1309.
In the instant case, the trial court took adequate steps to insure that defendant received a fair trial. Following the objection, the prosecutor did not pursue that line of argument, nor did he draw any further attention to the matter. Furthermore, the admonition given by the trial court was sufficient. Considering all of the above, we find no indication that the defendant was unable to obtain a fair trial because of the prosecutor's statement. Accordingly, we find no abuse of discretion in the trial court's ruling denying defendant's motion for a mistrial.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, defendant argues that the evidence presented by the *594 state, which was primarily circumstantial, was insufficient to prove that defendant knowingly and intentionally possessed cocaine.
The proper method to raise the issue of insufficient evidence is by motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. See State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record does not indicate defendant made such a motion, but it does contain an assignment of error which alleges the evidence was not sufficient. Therefore, this court will review the sufficiency of the evidence, although this issue was not properly raised. In doing so, we will consider the evidence as though a motion for post-verdict judgment of acquittal had been filed under LSA-C.Cr.P. art. 821.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). (Emphasis in original.) See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
In the instant case, the state presented the testimony of Corporal Palliser concerning the nervous behavior of each of the occupants, including defendant, and the fact that defendant was driving the vehicle.
Alvin Eislen, a U.S. Customs Officer, testified that Ms. Munoz informed him on the night of the arrest that she, defendant, and Mr. Perez arrived by commercial airliner at Houston, where they took a taxi to a Days Inn. At the hotel, defendant and Mr. Perez met with two black men.
Ms. Munoz testified that defendant asked her on the day before they actually left, whether she would like to take a trip to Houston. Defendant informed her that Mr. Perez would be traveling with them. He also told her that Mr. Perez was going to Houston to pick up a van. Mr. Perez "arranged" their tickets. Although she thought they were going to stay in Houston for a couple of days, they left within a few hours, immediately after picking up the van at a repair shop in Houston. At trial, Ms. Munoz denied making any statement to Agent Eislen that they had gone to a hotel.
Defendant also testified at trial. He testified that he accompanied Mr. Perez on the trip to Houston to help him drive the van back to New Jersey. Further, he denied knowing there was any cocaine in the vehicle.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Gordon, 582 So.2d 285, 292 (La.App. 1st Cir.1991). In returning this guilty verdict, the jury obviously believed the testimony presented by the state and rejected the defense. The credibility of the witnesses' testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
Viewing all the evidence in the light most favorable to the state, any rational trier-of-fact could have found that the state proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that defendant knowingly and intentionally possessed the cocaine in this case. This assignment of error is without merit.

*595 ASSIGNMENT OF ERROR NUMBER FOUR
In his fourth assignment of error, defendant maintains that the trial court erred when it failed to grant a mistrial or hold a hearing to determine whether or not Mr. Colarte's trial attorney had a conflict of interest. Defendant's appellate counsel maintains that Dave Dickson, who originally represented all three defendants and who represented Ms. Munoz and defendant at trial, was aware of statements made by Mr. Perez during police interrogation that Ms. Munoz and defendant did not have anything to do with the drugs; yet, he failed to elicit testimony regarding this issue at trial. Defendant argues these actions by his former attorney constitute a clear conflict of interest.
Multiple representation is not per se illegal and does not violate the Sixth Amendment to the United States Constitution or Article I, § 13, of the Louisiana Constitution unless it gives rise to a conflict of interest. State v. Castaneda, 94-1118, p. 4 (La.App. 1st Cir. 6/23/95); 658 So.2d 297, 301. The time at which an issue of a conflict of interest is raised will determine which standard applies. If the issue is raised prior to trial, the trial court must either appoint new counsel or take adequate steps to ascertain whether the risk of a conflict of interest was remote. Where there has been no objection to the multiple representation prior to or during trial, the defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance" in order to establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment. The mere "possibility" of conflict is insufficient to impugn a criminal conviction; the defendant must show that his counsel actively represented conflicting interests. A defendant who shows that a conflict of interest actually affected the adequacy of counsel's representation need not demonstrate prejudice in order to obtain relief. Castaneda, 94-1118, pp. 11-12; 658 So.2d at 305 (citing Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)).
In the instant case, defendant did not raise the conflict issue at or during the trial; nor has he demonstrated any facts of which the trial court was aware which would have prompted an inquiry. Thus, defendant must show an actual conflict of interest.
Defendant maintains that his trial counsel, who represented all three of the defendants for a period of time and who represented Ms. Munoz and defendant at trial, was aware of statements that were supposedly made by Mr. Perez to Lt. Lentz to the effect that Ms. Munoz and defendant were not aware of any drugs hidden in the van. Defendant argues that counsel's failure to question Lt. Lentz regarding this matter constitutes a clear conflict of interest. Further, defendant argues that statements which were made to the police by Ms. Munoz regarding a meeting with two Colombians at a hotel in Houston demonstrated a conflict of interest. However, at trial, Ms. Munoz denied making any statement to the police regarding even going to a hotel. Thus, there was not any incompatibility between the defense offered by Ms. Munoz and defendant.
In the instant case, defendant has not shown that an actual conflict of interest adversely affected his attorney's performance. All he has presented is a possible explanation for his trial counsel's failure to pursue a particular line of cross-examination. A review of the proceedings reveals that Ms. Munoz and defendant maintained throughout the proceedings that she traveled to Houston with defendant to help him drive a van back to New Jersey. Both Ms. Munoz and defendant testified at trial that they were unaware of any drugs in the vehicle. Thus, the failure of trial counsel to cross-examine Lt. Lentz regarding statements made by Mr. Perez concerning their knowledge of drugs in the vehicle cannot be viewed as a conflict of interest, when both defendants took the stand and testified on this precise fact. Thus, failing to find any actual conflict of interest, we find this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
In this assignment of error, defendant argues that the sentence imposed by the trial *596 court was excessive. Defendant was convicted of possession of 400 grams or more of cocaine, a violation of LSA-R.S. 40:967(F)(1)(c). The term of imprisonment for violation of this statute is not less than 30 nor more than 60 years and a fine of not less that $250,000 nor more than $600,000.
The trial court sentenced defendant to serve 40 years at hard labor with the Department of Corrections, 30 years of which are without benefit of parole, probation or suspension of sentence, with credit for time served, and to pay a fine of $400,000. Defendant filed a timely motion to reconsider sentence, which was denied by the trial court.
Because defendant was sentenced on June 14, 1995, the advisory sentencing guidelines promulgated by the Louisiana Sentencing Commission (effective January 1, 1992) were applicable to his sentencing.[5] In this case, the trial court ordered and received a presentence investigation report (PSI). The PSI noted that defendant had previous arrests, including a felony conviction in Florida for carrying a concealed weapon. The PSI included a sentencing guidelines report reflecting that, under the advisory sentencing guidelines promulgated by the Louisiana Sentencing Commission, the applicable sentencing range of incarceration for this defendant who falls into grid cell 1-F and who commits the instant offense is between 72-102 months. This range falls short of the statutory minimum of 30 years. The recommendation in the PSI stated "based on the subject's record it would appear that he has been involved in narcotics for some time and should receive a lengthy sentence in the Department of Public Safety and Corrections."
Under the law in effect at the time of defendant's sentencing, a trial court was required to "consider" the Felony Sentencing Guidelines promulgated by the Louisiana Sentencing Commission in imposing sentence and to state for the record the considerations taken into account and the factual basis for the sentences imposed. LSA-C.Cr.P. art. 894.1(A) & (C). Provided the court complied with the requirements of Article 894.1, it had "complete discretion to reject the Guidelines and impose any sentence which [was] not constitutionally excessive, but [was] within the statutory sentencing range for the crime of which a defendant [had] been convicted...." (Footnote omitted.) State v. Smith, 93-0402, p. 3 (La.7/5/94); 639 So.2d 237, 240 (on rehearing). The Louisiana Supreme Court described our duty as a reviewing court as follows:
[W]here the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
State v. Smith, 93-0402, p. 3; 639 So.2d at 240.
In imposing the instant sentence, the court gave the following reasons:
The Court has received the presentence investigation report regarding both of these defendants. I have also reviewed the sentencing guidelines and reviewed the appropriate statute mentioned earlier. The statute mandates a sentence of hard labor for not less than thirty nor more than sixty years and a fine of not less than two hundred thousand dollars nor more than six hundred thousand dollars.
Regarding Mr. Colarte, after review of the sentencing guidelines and the presentence investigation and the mandate of the statute, [the] Court hereby sentences Walfrido Colarte to spend forty years at hard labor with the Department of Corrections and to pay a fine of four hundred thousand dollars.
The trial court went on to state:
Mr. Roberto Perez, your presentence investigation does show that you have had involvement in the drug trade prior to this. And regarding both defendants, this was a *597 considerable amount of cocaine greatly exceeding the minimum as required in the statute of four hundred grams. And due to the nature of this crime, I feel [it] is a poison to our society....
From our review of the record it is clear that the trial court considered the guidelines and adequately stated the considerations taken into account as well as the factual basis for imposition of defendant's sentence. Consequently, under State v. Smith, 93-0402, p. 3; 639 So.2d at 240, we are limited to a review of the sentence for constitutional excessiveness without regard as to whether the trial court employed or deviated from the guidelines.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within the statutory limits. State v. Andrews, 94-0842, pp. 8-9 (La.App. 1st Cir. 5/5/95); 655 So.2d 448, 454.
We find that the imposition of a 40 year sentence in the instant case was warranted for the reasons expressed by the trial court at sentencing. As noted by the trial court, the amount of cocaine seized was enormous. Further, defendant has a previous felony conviction. Based upon the entirety of the record, and particularly the sentencing reasons articulated by the trial court, we find no error in the district court's determination that the sentence was appropriate for this defendant and this offense. The sentencing record supports the sentence imposed on this defendant who clearly poses an unusual risk to public safety. The 40 year sentence is not shocking to our sense of justice; accordingly, this assignment is meritless.

ASSIGNMENT OF ERROR NUMBER SIX
In his final assignment of error, defendant contends that his criminal prosecution, following a civil forfeiture of his cash in the amount of $1,191, constitutes double jeopardy in violation of his constitutional rights.
The record reveals that the state filed civil forfeiture proceedings against defendant in the district court, under docket number 94-14029. (Exhibit 1) Defendant maintains that this forfeiture constitutes a "punishment" precluding further proceedings.
In State v. Johnson, 94-0595 and 94-1077, p. 5 (La.1/16/96); 667 So.2d 510, 513, the Louisiana Supreme Court noted:
LSA-Const. art. 1 § 15 provides, in pertinent part, that `[n]o person shall be twice placed in jeopardy for the same offense.' Amendment V of the United States Constitution, in pertinent part, provides that `nor shall any person be subject for the same offence to be put in jeopardy of life or limb.' From our analysis of the language of these provisions and the constitutional history of the state provision, we conclude that the drafters and ratifiers of the state constitution did not intend for this court to define "punishment" for purposes of double jeopardy analysis any more broadly in favor of individuals subjected to the civil forfeiture of property than "punishment" has been construed by the United States Supreme Court in its recent cases. See Department of Revenue of Montana v. Kurth Ranch, [511 U.S. 767], 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).
Halper applied a two-part test, namely, does the civil penalty (1) impose a sanction overwhelmingly disproportionate to the damages the offender has caused and (2) bear no rational relation to the goal of compensating the government for the cost it has incurred in investigating and prosecuting the violation. Halper, 490 U.S. at 449-50, 109 S.Ct. at 1902. Only if the specific penalty satisfies both of these conditions will it violate *598 double jeopardy prohibitions. Johnson, 94-0595 & 1077, p. 11; 667 So.2d at 517.
Applying this two-part test to the instant case, we find the record reveals that Lt. Lentz stated the costs of investigation would be difficult to calculate, because the investigation involved not only the Sheriff's Department, but also law enforcement agencies from other states, as well as the Drug Enforcement Administration. He estimated approximately $1,590 was expended on Sheriff's Department payroll. Lt. Lentz also discussed other costs to the Sheriff's Department, such as the daily cost of confinement and the costs associated with maintenance of a narcotics canine. Finally, he estimated the street value of the cocaine which was seized at $1.25 million. The prosecutor testified that the costs to his office included 38.5 hours for trial and preparation, up to 50 hours of appellate and post conviction work. Furthermore, the District Attorney's office employed an investigator in this case. Thus, as in Johnson, this case does not appear to this court to be "that rare case where the penalty provision subjects the offender to a sanction overwhelmingly disproportionate to the damages he has caused." Johnson, 94-0595 and 1077, p. 14; 667 So.2d at 518.
We also note that, after the Louisiana Supreme Court ruled in the Johnson case, the United States Supreme Court revisited the forfeiture issue in United States v. Ursery, ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). The Court held that civil forfeitures do not constitute "punishment" for purposes of the Double Jeopardy Clause. Ursery, ___ U.S. at ___, 116 S.Ct. at 2138. In Ursery, the United States Supreme Court reviewed its prior decisions of Halper, Austin and Kurth Ranch. The Court noted that these three cases are not in rem civil forfeiture cases. Halper was a civil penalty case; Austin involved the Excessive Fines Clause of the Eighth Amendment; and Kurth Ranch involved a state tax on confiscated property. Ursery, ___ U.S. at ___, 116 S.Ct. at 2143-44. The Court stated:
Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government. Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct. Though it may be possible to quantify the value of the property forfeited, it is virtually impossible to quantify, even approximately, the nonpunitive purposes served by a particular civil forfeiture. Hence, it is practically difficult to determine whether a particular forfeiture bears no rational relationship to the nonpunitive purposes of that forfeiture. Quite simply, the case-by-case balancing test set forth in Halper, in which a court must compare the harm suffered by the Government against the size of the penalty imposed, is inapplicable to civil forfeiture. (footnote omitted)
Ursery, ___ U.S. at ___, 116 S.Ct. at 2145.
Thus, it appears that the two-part test utilized in Johnson has been abrogated by subsequent United States Supreme Court jurisprudence. Based on that jurisprudence, it appears that the civil in rem forfeiture at issue in the instant case cannot be considered as punishment.
Defendant cites United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir. 1994), in support of his argument. We note that the United States Supreme Court granted certiorari in that case and heard it as a companion case to Ursery. In that action the United States Supreme Court reversed the decision of the Ninth Circuit. Thus, defendant's reliance is misplaced.
Whether we apply the two-part Johnson test or characterize the forfeiture as a civil in rem forfeiture, the civil proceeding at issue in the instant case cannot be considered as a "punishment" for double jeopardy purposes. Thus, this assignment of error is without merit.

Assignments Relating to Codefendant
Defendant adopts by reference the arguments and assignments of error of his codefendant. In State v. Perez, 95 2445 La.App. 1 Cir. 12/20/96, 686 So.2d 117, Perez raised two assignments which were fully addressed herein. Thus, we find no merit in defendant's adoption of his codefendant's arguments.
*599 CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Judge Carl A. Guidry, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Barbara Munoz and Roberto Perez were also charged in the same bill of information. Ms. Munoz was acquitted; Mr. Perez was convicted, and his appeal, bearing docket number 95 KA 2445, was handed down on this date.
[3] We note that the statutory citation included in the bill of information is inaccurate. The state cited LSA-R.S. 40:967(F)(c); however, the proper citation is LSA-R.S. 40:967(F)(1)(c). Such error is not reversible as defendant was not prejudiced. See LSA-C.Cr.P. art. 464; State v. Domangue, 93-1953, p. 3 (La.App. 1st Cir. 12/22/94); 649 So.2d 1034, 1037.
[4] LSA-R.S. 32:79, reads in pertinent part:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
[5] LSA-C.Cr.P. art. 894.1 was amended by 1995 La. Acts No. 942, § 1, effective August 15, 1995. The amendment included a deletion of the former requirement that a trial court consider the guidelines promulgated by the Louisiana Sentencing Commission.