752 So.2d 911 (1999)
STATE of Louisiana
v.
Terry OLIVER and Debra Oliver.
No. 99-K-1585.
Court of Appeal of Louisiana, Fourth Circuit.
September 22, 1999.
*912 Harry F. Connick, District Attorney of Orleans Parish, Richard M. Exnicious, Assistant District Attorney, New Orleans, LA, Counsel for Relator.
(Court composed of Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER and Judge PATRICIA RIVET MURRAY).
WALTZER, Judge.

STATEMENT OF THE CASE
On 23 April 1999 the State filed a bill of information charging the defendant with possession of marijuanafirst offense, a violation of La. R.S. 40:966(D)(1). On 19 May 1999 the defendant pleaded not guilty and filed a motion to suppress. On 2 June 1999 the trial court declared that it would hear the motion to suppress the evidence in conjunction with the trial. After hearing all the testimony, the trial court granted the defendant's motion to suppress. The State objected and noticed its intent to file for writs. The trial court set the return date on 16 June 1999. On that day the trial court appears to have granted the State's motion for extension of time to 23 June 1999.[1] The State timely filed its application on 23 June 1999. The 23 June 1999 minute entry noted that the State had filed its writ application and set a status hearing on 30 June 1999. The 30 June 1999 entry noted the State's writ application and that the defendants were in court and were dismissed until further notice.

STATEMENT OF THE FACTS
Officer Brian Baye testified that on the night of 11 April 1999 he and his partner, Officer Robert Gisevius, conducted a vehicle stop. The officers approached the truck and "detected a strong odor of burning marijuana coming from the vehicle." The officers asked the driver and the passenger to exit the vehicle. At that time Officer Gisevius observed a partially smoked hand-rolled cigarette on the driver's side floorboard. He retrieved it and discovered that it was a marijuana cigarette. Officer Gisevius informed Officer Baye of what he found. Officer Baye arrested both subjects for possession of marijuana. Officer Gisevius continued to search the vehicle and found an additional partially smoked hand-rolled marijuana cigarette inside the ashtray. After Officer Baye arrested Oliver, a search of her purse revealed a cigarette package containing four complete and one partially smoked hand-rolled cigarettes, which the officers believed to contain marijuana.
Officer Baye stated that he and Officer Gisevius initially observed the vehicle stop in the middle of the intersection of Decatur and St. Peter Streets. The position of the vehicle in the middle of the intersection caused problems for the numerous pedestrians, who were trying to use the crosswalk. The officers followed the vehicle to North Peters and Esplanade Avenue before conducting the traffic stop. The officers also observed that the truck did not have a rear view mirror.[2]
On cross-examination Officer Baye stated that the French Quarter Festival was being held that weekend, during which thousands of people were present. When asked about his reason for stopping the truck which was right in front of the police car at the intersection, Officer Baye testified: "We initially stopped them not to *913 issue any citations, but just to advise them of the violations that they had along with" The officer stated that the violations involved stopping in the middle of a cross walk blocking pedestrians and the missing rear view mirror. When he was asked whether he intended only to give a warning, he answered: "Correct." Officer Baye admitted that issuing the warning was not a high priority item on such a chaotic night. The officer pointed to nothing else suspicious that made the officers follow the Oliver vehicle for six blocks. Officer Baye said that he could not recall that he saw anyone smoking marijuana when the he and Officer Gisevius pulled over the vehicle. Officer Gisevius was the first to smell the marijuana as he approached the driver's side of the truck. Officer Baye admitted that he did not see a marijuana cigarette when he stopped the vehicle. Officer Gisevius spotted the cigarette on the floorboard after the officers had removed the occupants and Officer Baye was detaining them at the back of the truck. Officer Gisevius searched the truck to see if there were other drugs in it. Officer Baye conceded that usually during a traffic stop, the occupants of the car remain inside the vehicle.
It was stipulated that William Giblen, a criminologist, would have testified that the items tested positive for marijuana. It was clarified that the cigarettes found on the floorboard and in the ashtray tested positive for marijuana, but the cigarettes from Mrs. Oliver's case in her purse tested negative; however, the blunts in the cigarette case tested positive.
At the conclusion of the testimony the trial court stated:
Allright, counsel, I've heard the testimony of the investigating officer and I think his testimony was very candid. I think he was very truthful in his testimony. I - it's the Court's opinion that it was a real stretch in stopping these people for a traffic violation in the French Quarter for blocking an intersection and then following this vehicle for a period of six blocks before stopping was effected. Had there been, what I consider to be a legitimate traffic violation, I think the officer's stop would have been a valid one. But blocking an intersection or coming - going too far up on an intersection blocking pedestrian flow across an intersection on a holiday in the French Quarter, the French Quarter Festival, I think is really stretching the reason for the stop. Therefore, I do not feel that the officer had a valid reason to stop the vehicle and I'm going to sustain counsel's motion to suppress the evidence in this case.

ANALYSIS
The State argues that the officers had reasonable cause to stop the truck even though they did not issue a traffic citation. The State contends that the officers observed the truck stop in the middle of the crosswalk; that violation of an ordinance[3] provided reasonable cause to stop the vehicle.
In State v. Mitchell, 97-2774 c/w 98-1128 and 1129 p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326-27, this Court discussed reasonable cause to stop a vehicle:
An individual cannot be stopped in his vehicle by a police officer, who does not have a warrant, unless the officer has reasonable suspicion that the individual is committing, has committed, or is about to commit a criminal offense, including the violation of a traffic regulation. La.C.Cr.P. art. 215.1; State v. Mock, 95-2156 (La.App. 4 Cir. 5/29/96), 675 So.2d 819. See also State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879. See generally Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La. *914 1983); State v. Smith, 94-1502 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078.
Reasonable suspicion for an investigatory stop is something less than probable cause. It must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual's right to be free from governmental interference. State v. Albert, 553 So.2d 967 (La.App. 4th Cir.1989). The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Anderson, 96-0810 (La.App. 4 Cir. 5/21/97), 696 So.2d 105. An investigative stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity, or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct. State v. Moreno, 619 So.2d 62, 65 (La. 1993). See also State v. Eddie, 96-2787 (La.App. 4 Cir. 4/30/97), 694 So.2d 503.
The trial court is vested with great discretion when ruling on motion to suppress. State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245 writ denied, 94-2058 (La.11/11/94), 644 So.2d 391.
Officer Baye testified that he saw the truck stop partially blocking a crosswalk on Decatur Street during the French Quarter Festival when there were thousands of people in the French Quarter. Although the officer also noted a missing rear view mirror in his testimony, the reason for the stop was the partial obstruction of the crosswalk. The State's argument focuses only on the violation relating to the crosswalk. Yet the officers followed the Oliver truck for six blocks after it stopped in the intersection before pulling it over. Officer Baye clearly testified that the officers did not intend to issue a citation; the officers intended only to give a warning. In fact the officers never issued a traffic citation. The trial court concluded that the officers did not have a valid reason for stopping the truck. The trial court did not abuse its discretion under the circumstances.
APPLICATION FOR WRIT OF CERTIORARI GRANTED; JUDGMENT OF THE TRIAL COURT AFFIRMED; RELIEF DENIED.
MURRAY, J., CONCURS WITH REASONS.
BYRNES, J., DISSENTS WITH REASONS.
MURRAY, J., concurring with reasons:
The State asserts that because the police officers made a valid traffic stop, the failure to issue a citation is not grounds for suppressing the evidence. However, as the trial court noted, the police officer's testimony did not establish that a traffic violation had occurred. He testified that the defendants' vehicle partially blocked a pedestrian crosswalk when it stopped for a red light, which is permissible under La. R.S. § 32:143 A. While the officer also stated that "the rear view mirror was missing," La. R.S. § 32:354 B requires an interior rearview mirror only if there is no exterior mirror on the right side of the vehicle, something the policeman did not mention.
BYRNES, J., dissenting with reasons:
I respectfully dissent based on my conclusion that the trial court erred in granting the defendants' motion to suppress.
The majority states that the trial court concluded that the officers did not have a valid reason for stopping the truck. The majority notes that the officers did not intend to issue a citation for the traffic violation.
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:

*915 "In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstancesthe whole picture," giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' Id." [Emphasis added.]
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need "articulable facts" taking into account the entire picture.
Sec. 154-923 of the Municipal Code of New Orleans provides:
Sec. 154-923. Places where stopping or parking is prohibited; no signs required.
(A) No person shall stop or park a vehicle or other conveyance, except when necessary to avoid conflict with other traffic or in compliance with the law or directions of a police officer or traffic-control device, at any of the following places:
(5) on a crosswalk.
Sec. 154-484 of the Municipal Code of New Orleans states:
Sec. 154-484. Stop when traffic obstructed.
No driver of a vehicle or operator of a streetcar shall enter an intersection or a crosswalk unless there is sufficient space on the other side of the intersection or crosswalk to accommodate the vehicle he is operating without obstructing the passage of other vehicles or pedestrians, notwithstanding any traffic control signal indication to proceed.
Pursuant to Sec. 154-699(2) of the Municipal Code of New Orleans, the fine for violation of Sec. 154-923 (above) is $15. Sec. 154-651 provides definitions, including the following: "Stop or stopping means the halting, where prohibited, even momentarily, of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic control sign or signal." Under Sec. 154-686, it is noted that parking and stopping are sometimes referred to as "parking".
La. R.S. 32:143(A)(5) states:
§ 143. Stopping, standing or parking prohibited in specified places
(A) No person shall stand, or park a vehicle, except when necessary to avoid conflict with other traffic, or in compliance with law or the directions *916 of a police officer or traffic control device, in any of the following places:
(5) on a crosswalk.
Traffic violations are a valid basis for an investigatory stop. State v. Richards 97-1182 (La.App. 5 Cir. 4/15/98), 713 So.2d 514. In that case the officers' initial stop of the vehicle was valid where an officer testified that the driver of the vehicle committed a traffic offense by failing to come to a complete stop at the stop sign, and the officers suspected that the car's temporary license plate was invalid.
In State v. Zapata, 97-1230 (La.App. 5 Cir. 5/27/98), 713 So.2d 1152, the officer's knowledge that he was stopping a car for a narcotics violation did not invalidate the investigatory stop for illegal lane usage, even if the traffic stop was a pretext for the drug stop. In that case, the officer observed the defendant's vehicle cross the three eastbound lanes of Veterans Boulevard, cross two westbound lanes to the third lane, and head west on Veterans. The officer stated that this constituted illegal lane usage. The officer validly pulled the vehicle over. He got the driver's license and asked the driver to exit the vehicle. The evidence that was subsequently seized was admissible.
In State v. Dixon, 30,495 (La.App. 2 Cir. 2/25/98), 708 So.2d 506, the stop of the auto was justified by the trooper's observation that the defendant's auto was less than a car length part from the lead auto, regardless of whether the trooper's time device accurately measured the distance between the automobiles.
In State v. Colarte, 96 0670 (La.App. 1 Cir. 12/20/96), 688 So.2d 587, writ denied, 97-1015 (La.10/3/97), 701 So.2d 197, the officers made a valid investigatory stop based on a traffic violation of illegal lane usage where the drive switched lanes without signaling.
In State v. Duran 69-602 (La.App. 5 Cir. 3/25/97), 693 So.2d 2, the officer validly stopped Duran's vehicle for improper lane usage where Duran changed lanes directly in front of a truck without signaling. The officer thought that the driver was impaired.
No brake tag provided officers with reasonable suspicion to stop the defendant in State v. Randall, 97-1395 (La.App. 4 Cir. 8/26/98), 718 So.2d 590.
In State v. Kalie, supra, the initial investigatory stop was valid although the officer did not write a traffic citation for improper lane use. When the vehicle was stopped, the occupants of the car acted nervous and the defendant's hands shook violently after the occupants emerged from the car. After the first officer told the occupants of the vehicle that they were free to go, another officer arrived on the scene with a drug detection dog in response to the first officer's call for backup. The defendant refused permission to search the vehicle. The first officer told the defendant that he was free to leave but that the police would detain the car for the dog's sniff test. The dog alerted on the trunk of the car. The Louisiana Supreme Court upheld the original investigatory stop based on the traffic violation for which the officer did not issue a traffic citation.
Pretext traffic stops are not per se improper, as constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. U.S. v. Glaspie, 993 F.Supp. 448 (W.D.La.1998), affirmed, 184 F.3d 819 (5 Cir. (La.) 6/17/99). In that case the vehicle "stop was constitutionally valid and was based on the officer's probable cause to believe that a violation of the window tint law had occurred." Id. at 458.
In Whren v. United States, 517 U.S. 806, 808, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996), the driver of a truck remained stopped for an unusually long time, then suddenly turned to its right without signaling, and sped off at an "unreasonable speed." The United States Supreme Court stated:
Petitioners urge as an extraordinary factor in this case that the "multitude of *917 applicable traffic and equipment regulations" is so large and so difficult to obey perfectly that virtually everyone is guilty of violation, permitting the police to single out almost whomever they wish for a stop. But we are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement. And even if we could identify such exorbitant codes, we do not know by what standard (or what right) we would decide, as petitioners would have us do, which particular provisions are sufficiently important to merit enforcement.
For the run-of-mine [sic] case, which this surely is, we think there is no realistic alternative to the traditional common-law rule that probable cause justifies a search and seizure.

Id. 116 S.Ct. at 1777.
The police need only some minimal level of objective justification for an investigatory stop pursuant to Huntley, supra. In the present case, Officer Baye stated that the truck stopped partially blocking a crosswalk. Officer Baye testified that:
... it was the in the middle of the intersection of Decatur and St. Peters Street, which is a pedestrian cross walk, which isat the time, was heavily congested with pedestrians, and with him, stopping in the middle of the cross walk, it was preventing people from crossing and going into the middle of the street to get to the other side of Decatur.
This crosswalk was at the intersection of Decatur and St. Peters Street in the French Quarter during the French Quarter Festival at night. In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La. App. 4 Cir. 5/7/97), 694 So.2d 549.
In the present case Officer Baye stated: "We initially stopped them not to issue any citations, but just to advise them of the violations." Although the officers did not stop the vehicle for six blocks, Officer Baye testified that it was the customary procedure to "[u]sually make sure that the area is clear of any further traffic or pedestrian traffic so we don't hold up traffic, cause any traffic jams." Considering the traffic and amount of pedestrians on the street during the French Quarter Festival, it was not unreasonable for the officers to proceed several blocks before stopping the truck to avoid holding up traffic. Deference should be given to the experience of the policemen who were present at the time of the incident. Short, id. The officers also observed a missing rear view mirror, which is a violation of La. R.S. 32:354 B if there were no exterior mirror on the right side of the vehicle.
Although the police did not issue a traffic citation but stopped the truck to give a warning, the officers had probable cause to believe that a traffic violation had occurred. The police were justified in stopping the truck under the totality of circumstances.
The continued detention of a motorist after a traffic stop must be based on reasonable cause, something less than probable cause, according to the facts and circumstances known to the officers. State v. Dixon, supra. If a defendant's conduct during a traffic stop gives rise to a reasonable suspicion of drug violations, an officer may detain the vehicle for a limited period of additional time to investigate. State v. Franklin, 31,068 (La.App. 2 Cir. 9/23/98), 719 So.2d 578, writ denied, 98-2982 (La.3/19/99), 739 So.2d 781. In that case, after police officers stopped Franklin because his vehicle had a broken tail light. The officers were justified in continuing their investigation by asking Franklin for his consent to search, where both officers testified that after being stopped, Franklin appeared nervous and fidgety. When Franklin entered the vehicle to get the *918 registration and insurance documents, one officer noticed the scent of marijuana emanating from the vehicle, and was standing outside open driver's door when he saw a small plastic bag with powdery residue, resting in an ashtray on the console. The initial stop and subsequent seizure of the contraband were valid.
The police may order passengers to exit a vehicle during a routine traffic stop, even though only the driver has committed the traffic offense. State v. Parfait, 96 1814 (La.App. 1 Cir. 5/9/97), 693 So.2d 1232, writ denied, 97-1347 (La.10/31/97), 703 So.2d 20. In that case the violation was an occupant having an open beer can in violation of the open container local ordinance. In State v. Reynaga, 93-1520 (La.App. 3 Cir. 10/5/94), 643 So.2d 431, the odor of marijuana coming from the car was sufficient for a finding of probable cause to search the car.
In the present case Officer Baye testified that when he and his partner, Officer Robert Gesivius, approached the vehicle, they both detected a strong odor of burning marijuana coming from the vehicle. This factor created additional reasonable cause to detain the occupants and order them to exit the vehicle.
As the defendants exited the truck, they did not close the doors of the truck. Officer Baye's partner observed a partially smoked hand-rolled cigarette on the driver's side floorboard in plain view. The hand-rolled cigarette was lawfully seized pursuant to the plain view exception to the warrant requirement. In State v. Smith, 96-2161, p. 3 (La.App. 4 Cir. 6/3/98), 715 So.2d 547, 549, this court discussed this exception:
In order for an object to be lawfully seized pursuant to the "plain view" exception to the Fourth Amendment, "(1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband." State v. Hernandez, 410 So.2d 1381, 1383 (La.1982); State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.), writ denied 629 So.2d 1126 and 1140 (La.1993). In Tate, this court further noted: "In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found "inadvertently" in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently." Tate at 917.
"Immediately apparent" in this context means only that the officer must have probable cause to believe an item is contraband. State v. Jones, 93-1685 (La.App. 4 Cir. 7/27/94), 641 So.2d 688. Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer's knowledge in light of experience of reasonable people, not legal technicians. State v. Flanagan, 29,316 (La.App. 2 Cir. 4/2/97), 691 So.2d 866.
In the present case, There was no invasion of the defendants' right to privacy. It was immediately apparent that the discovered object was marijuana. The officer's seizure of the contraband in plain view was legal. At that point the officers had probable cause to arrest the defendants and to search the truck.
In State v. Kalie, supra, exigent circumstances arising from the detention of the vehicle on the road excused the lack of a warrant. In that case the Louisiana Supreme Court stated that "the automobile exception to the Fourth Amendment's warrant requirement was based on the automobile's `ready mobility', an exigency sufficient to excuse the failure to obtain a search warrant once probable cause to conduct the search is clear." Id, 699 So.2d at 881-882. The "automobile exception" is based upon the existence of probable cause to search and exigent circumstances. *919 State v. Tatum, 466 So.2d 29 (La.1985). Probable cause to search exists when the total circumstances allow the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular location. State v. Pittman, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748. For constitutional purposes, there is no difference between seizing and holding a car before presenting the probable cause issue to a magistrate and carrying out an immediate search without a warrant; given probable cause to search, either course is reasonable under the Fourth Amendment and Louisiana Constitution. State v. Tatum, supra.
In the present case an additional partially smoked hand-rolled cigarette containing marijuana found inside the ashtray and additional hand-rolled cigarettes found in Debra Oliver's purse were validly seized pursuant to a valid search of the truck and Ms. Oliver's purse incidental to the defendants' arrest.
Further, if the officers had reasonable suspicion to initiate an investigatory stop and probable cause for an arrest, the evidence need not be suppressed if it would have inevitably been discovered on lawful grounds. State v. Ballon, 97-2036 (La. App. 4 Cir. 11/12/97), 703 So.2d 130, writ not considered, 97-3114 (La.2/13/98), 706 So.2d 987. As this Court stated in State v. Knapper, 626 So.2d 395, 396 (La.App. 4 Cir.1993), writ denied 93-2950 (La.1/28/94), 630 So.2d 798:
In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court adopted the "inevitable discovery" doctrine, holding that evidence found as a result of a violation of a defendant's constitutional rights, would be admissible "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered." The so-called "inevitable discovery doctrine" has been followed by Louisiana courts. State v. Nelson, 459 So.2d 510 (La.1984), cert. den., Nelson v. Louisiana, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986).
In the present case the search of the ashtray and the search of Ms. Oliver's purse were legal incidental to the valid arrests, and the marijuana cigarettes would have been ultimately or inevitably discovered. The legally seized evidence is admissible.
Accordingly, I would reverse the ruling of the trial court and deny the defendants' motion to suppress.
NOTES
[1] The minute entry provides: "Court granted State motion and reset ruling on writs for June 23, 1999 at 3:00 p.m."
[2] The point in time when the officers observed the missing rear view mirror is not clear.
[3] In his testimony Officer Baye does not cite the ordinance violated, and the State in brief does not cite the ordinance.