722 So.2d 353 (1998)
STATE of Louisiana, Plaintiff-Appellee,
v.
Llewellyn Maurice ISAAC, Defendant-Appellant.
No. 31,277-CA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
*354 Robert W. Sharp, Jr., Ruston, Counsel for Appellant.
Robert W. Levy, District Attorney, A. Scott Killen, Assistant District Attorney, Counsel for Appellee.
Before MARVIN, C.J., and HIGHTOWER and WILLIAMS, JJ.
MARVIN, C.J.
In this civil forfeiture case, Llewellyn Maurice Isaac appeals a judgment forfeiting to the State $19,571 in cash seized as the result of a traffic stop on May 1, 1997 on Interstate 20 in Lincoln Parish. An experienced drug dog of the state police alerted on Isaac's automobile after the stop, but no drugs were found in a comprehensive search, only the cash wrapped in duct tape that was secreted in various parts of the car. Once the cash was seized the drug dog alerted on it at the sheriff's office.
Isaac contends the police had no reasonable grounds for the traffic stop and no probable cause or reasonable suspicion for the warrantless search. Isaac also claims the State failed to prove that the money found in the car is legally subject to forfeiture under La. R.S. 40:2601 et seq.
We affirm.

BURDEN OF PROOF
The State has the initial burden of showing the existence of probable cause for *355 forfeiture of property under the provisions of La. R.S. 40:2601 et seq. State v. Giles, 29,695 (La.App.2d Cir.6/18/97), 697 So.2d 699; State v. Albritton, 610 So.2d 209 (La.App. 3d Cir.1992). If the State meets this burden, the claimant must show by a preponderance of the evidence that his or her interest in the property is not subject to forfeiture. Albritton, supra.
Because of the similarity of our law with federal forfeiture law, our courts have considered the federal jurisprudence under which probable cause for forfeiture has been defined as a reasonable ground for belief of guilt, supported by less that prima facie proof but more than mere suspicion, and under which probable cause may be established by demonstrating by some credible evidence the probability that the money was drug-related. Giles, Albritton, supra. The State is not required to trace the money to a particular drug transaction, but may establish probable cause for the forfeiture from the totality of the circumstances, with a common sense view to the realities of normal life. Albritton, 610 So.2d at 213, citing U.S. v. One 1987 Mercedes 560 SEL, 919 F.2d 327 (5th Cir.1990).

TRIAL COURT FINDINGS
The record supports the trial court's written reasons for judgment:
The facts relating to this forfeiture began on May 1, 1997, when Lincoln Parish Sheriff's Deputy Jim Stephens observed Isaac's vehicle proceeding in a westerly direction on Interstate 20. He observed the 1990 Nissan Maxima weave gently on the highway with the result that the vehicle's right tires went onto the fog line. This observation prompted him to follow the vehicle for approximately one mile and a half to two miles during which time he observed the right tires proceed onto the right fog line three more times. Fearing that the driver was impaired, Deputy Stephens stopped the vehicle.
Two persons were in the car, Isaac, the owner and operator of the vehicle, and an eighteen year old passenger, Adrian Pugh ("Pugh"), who was asleep on the right front passenger side. After Isaac produced his driver's license, he was asked to exit the vehicle by Deputy Stephens. Isaac told the deputy that he had been in Mobile at his father's home and was driving back to Texas. He further responded that he was taking Pugh to Texas to help him find a job. When the deputy questioned Pugh, the passenger in the front seat, he properly identified himself but did not mention the aforesaid job hunt.
After a short lapse of time, Deputy Stephens obtained the vehicle registration papers and testified that Isaac had become extremely nervous to the point that the vein in his neck was protruding and clearly revealed his heart rate. A criminal history check revealed arrests of Isaac in Mobile for possession of cocaine, unlawful distribution of a controlled dangerous substance, receiving stolen property, and a weapons charge.
After writing Isaac a warning ticket for improper lane usage, which was admittedly never issued, Deputy Stephens tried to secure permission from Isaac to search his vehicle, but to no avail. Since Isaac did not consent to the search of his vehicle, Deputy Stephens summoned a K-9 unit from Monroe, Louisiana. In response to this request, Trooper Jaubert arrived at the scene with his drug dog and proceeded to ascertain if the dog would exhibit any indication that there were drugs or other narcotics in the car. In fact the K-9 made a positive alert on the trunk of Isaac's vehicle. A search of the trunk revealed a blue duffle bag containing a large quantity of cash separated into two bundles wrapped with grey steel duct tape. A more complete search of the vehicle revealed a grand total of $19,571.00 was located in the trunk, glove compartment, and driver's door side panel. When questioned about the money, Isaac stated that the money was not his and that he did not know who it belonged to. Pugh stated that he did not know anything about the money, and even signed a disclaimer.
As a result of this traffic stop, the Lincoln Parish Sheriff's office seized the currency based on the belief that a connection existed between the money and a violation *356 of narcotics laws. Subsequent thereto, Isaac filed a rule to show cause why the $19,571.00 should not be returned to him and a stipulation of exemption entered.
The trial court concluded that Isaac's deviant driving furnished the deputy with "probable cause" to make the traffic stop. We agree that the deputy acted reasonably for the purpose of ascertaining the condition of the driver. The trial court rejected any argument that Isaac was stopped on a pretextual basis.
The court also found that the aggregate of the facts sufficiently established a connection between the property to be forfeited and a violation of narcotics laws. The trial court noted that Isaac demonstrated extreme nervousness when he was stopped, and that he had a history of arrests for receiving stolen property, a weapons charge, possession of cocaine and unlawful distribution of a controlled dangerous substance. The court emphasized that Isaac did not mention the latter two charges when Deputy Stephens asked him about his arrest record before running a record check. Isaac did not deny or contradict Deputy Stephens' account of his partial disclosure at trial. He simply attempted to explain his response by saying, "[W]hen he asked me what I had been arrested for, if anything ... I was thinking he was meaning convicted."
Another factor noted by the court was the drug dog's positive alert to the trunk where the majority of the money ultimately was found. The court stated that carrying a large sum of cash was an indication the money was related to illegal drug activity, even though no drugs or drug paraphernalia were present. Similarly, the court found that the dog's positive alert for the presence of narcotics on the seized currency itself was evidence of a relation to illegal drug activity.
Additionally, the court noted that the way the cash was packaged and Isaac's attempt to hide the money in various places was a relevant fact in considering a connection with illegal drug activity. Finally, the court observed that Isaac gave conflicting stories as to his ownership of the cash because he specifically told the detaining officer at the scene that the money was not his and that he did not know to whom it belonged. The court obviously did not believe Isaac's testimony to the contrary: "I never said it wasn't... mine.... I never said I didn't know whose it was."
Finding that the State established probable cause for the forfeiture, the trial court concluded that the burden then shifted to Isaac to prove by a preponderance of the evidence that the money came from an independent, non-drug related source or to otherwise refute the State's showing of probable cause. After noting that witness credibility was again "an extremely important determination," the court found Isaac's version of the facts to be "highly suspect," and Isaac's father's testimony to be "an overt attempt to aid and assist his son to regain the seized money." The court concluded that Isaac failed to refute the State's showing of probable cause by credible evidence, rejecting Isaac's demands.

DISCUSSION
In a civil forfeiture proceeding the trial court's findings of fact are subject to the manifest error/clearly wrong standard of appellate review. State v. $29,177 U.S. Currency, 93-592 (La.App. 3d Cir.2/2/94), 638 So.2d 653, writ denied. Under that standard, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact made to resolve conflicts in the testimony of the trial witnesses should not be disturbed. When there are two permissible views of the evidence, the fact finder's decision to credit one and discredit the other can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La. 1989); State v. $29,177 U.S. Currency, supra.
These principles apply to Isaac's assignments of error, the first of which complains of the traffic stop. An investigatory stop has been justified where police observed the defendant's right tires cross onto the shoulder three times within a quarter of a mile. State v. Vincelli, 555 So.2d 21 (La.App. 1st Cir. 1989). Here, we cannot find the trial court clearly wrong in crediting Deputy Stephens' testimony over that of Isaac.
*357 In his second assignment Isaac complains that the trial court found probable cause or reasonable grounds to justify the warrantless search of his vehicle. Again, there is conflicting testimony between Deputy Stephens and Isaac as to what occurred after the investigatory stop took place. However, the trial court's written reasons clearly reveal that the court believed Isaac deliberately failed to disclose his drug-related arrests when Stephens questioned him about previous arrests. The trial court also believed Stephens' testimony that Isaac was extremely nervous to the point that a vein in his neck revealed his heart rate.
Finding no grounds to overturn the trial court's credibility determinations, we conclude that the extreme nervousness of Isaac after being stopped, when combined with his criminal history of arrests for possession of cocaine, unlawful distribution of a controlled dangerous substance, receiving stolen property and a weapons charge, as well as his failure to disclose the drug-related arrests when questioned by Deputy Stephens, made it reasonable for Stephens to summon the K-9 unit to the scene. See and compare State v. Thompson, 543 So.2d 1077 (La.App. 2d Cir.1989), writ denied.
Moreover, although Isaac asserted that the drug dog's alert to the trunk of his car was prompted by the dog's handler, the trial court obviously did not believe Isaac, and credited the contrary testimony of Trooper Jaubert. The drug dog's positive alert to the trunk of Isaac's vehicle, in combination with the factors already mentioned, gave the officers at the scene reasonable grounds upon which to conduct a warrantless search of Isaac's vehicle.
As stated by this court in State v. Paggett, 28,843 (La.App.2d Cir.12/11/96), 684 So.2d 1072, while a canine sniff test by a well-trained drug detection dog does not constitute a search within the meaning of the Fourth Amendment, once the drug dog alerts, officers have further probable cause to conduct a warrantless search. We further stated that in order for a "roadside stop" warrantless search of a vehicle to be constitutional, there must be probable cause to believe that the vehicle contains contraband or evidence of a crime, together with "exigent circumstances" requiring an immediate search. The circumstances must support the conclusion that it is impractical to obtain a warrant because of the possibility that the vehicle could be moved and its contents never found again.
Just as sufficient probable cause was found in Paggett for a warrantless vehicle search where marijuana odor was present on the defendant and a drug dog alerted during a sniff test around the exterior of the vehicle, we conclude that in the instant case the trial court did not err in finding sufficient probable cause for a warrantless search of Isaac's vehicle under the factual scenario described above.
In his final assignment of error, Isaac contends the trial court erred in determining that the cash found during the search was legally subject to forfeiture. Isaac argues that although the drug dog alerted on the trunk, and subsequently alerted on the money itself at the sheriff's office, no drugs, paraphernalia, gleanings, etc. were discovered either in the vehicle or on either of its occupants. Isaac also claims the drug dog only alerted on the trunk, if at all, after Trooper Jaubert tapped on the trunk. He contends there was no testimony that he was involved in any drug-related criminal activity at the time of the stop, and no evidence that the money was in any way connected with drug-related or criminal activity. Instead, Isaac argues it was merely the amount of money and the nature of its packaging, coupled with Isaac's race and age [26], which gave rise to Stephens' suspicions.
Once again, the credibility determinations of the trial court weigh heavily. Contrary to Isaac's testimony, Trooper Jaubert testified that the dog's alert on the trunk was voluntary. The trial court credited the trooper's testimony over Isaac's testimony. Nor is there any dispute that the dog alerted on the money itself at the sheriff's office, even when Trooper Jaubert was not aware of where the money had been placed and could not have influenced the dog's behavior. Additionally, and contrary to Isaac's testimony, several officers present at the search scene testified *358 that Isaac denied knowing where the money came from or to whom it belonged. The trial court found "highly suspect" Isaac's version of the facts, in which Isaac claimed the money came from his father and was to be used to buy a house, and found his father's testimony to be an overt attempt to aid and assist his son in regaining the money.
Accepting the trial court's factual findings, we conclude that the totality of the circumstances supports the trial court's conclusion that sufficient probable cause for forfeiture existed. The fact that Isaac denied both ownership of the money and knowledge of its presence at the search scene is significant. If the money had a legitimate origin, and especially if Isaac's father was the owner, there would have been no reason for Isaac to deny any knowledge of its presence or purpose. Furthermore, Joey Davidson, who at the time of the incident was an employee of the Lincoln Parish Sheriff's Office and who had specialized training related to narcotics investigation, testified that the manner in which the cash was packaged was not consistent with anything in his prior experience other than narcotic trafficking. He stated that he had seen money packaged with duct tape in other circumstances involving narcotic traffickers.
Added to this is the drug dog's positive alert both at the scene of the stop and later at the sheriff's office. These circumstances preponderantly show the connection between the money and illegal drugs. Finally, we have the fact of Isaac's prior arrests for possession of cocaine and unlawful distribution of a controlled dangerous substance, the court's finding that Isaac was extremely nervous when stopped by Deputy Stephens, and the court's rejection of the credibility of the testimony by Isaac and his father.

DECREE
At appellant's cost, the trial court's judgment is AFFIRMED.